JASPER WARD

v.

FERNANDO DE LA MAZA ARREDONDO and others.

Complainant a citizen of this state being at Havanna made a contract with defendant A. there a Spanish subject, for lands in Alabama. Partial payments were made and partial conveyances executed. Defendant A. sent a conveyance for some part of the lands to the defendant T. his agent in New York to be delivered on the payment of a certain sum claimed, which sum was more than the complainant admitted to be due. Bill for an account, both of payments made and of lands to be conveyed upon the foot of the contract, and to restrain the defendants from withdrawing the deed out of the jurisdiction, and for relief.

Held that the courts of equity of this state have jurisdiction to enforce the contract.

The principle is that the jurisdiction may be upheld, whenever the parties, or the subject, or such a portion of the subject are within the jurisdiction, that an effectual decree can be made and enforced, so as to do justice.

THIS cause came before the court upon an appeal filed by Jasper Ward, the complainant in the court below, from a decree of the judge of the first circuit, in equity, whereby he decreed a dissolution of the injunction granted by him on the filing of the after mentioned bill, upon the ground of want of jurisdiction, &c.

The bill was filed on the sixth day of August 1823, and stated, that the complainant being at Havanna, which was the residence of the defendants, who were partners under the firm of F. M. Arredondo and Son, on the 15th of March 1821, entered into a sealed contract with them, for the purchase of one half of a tract of land situate at Lachua in East Florida. The contract recites, that the said F. M. Arredondo and Son had received a title from the Spanish government, for 289,645⁵⁄₇ acres of land situate at Lachua as would more fully appear by said title dated at Havanna, the 22d of December 1817 ; and that they had agreed to sell and convey their right and title to 144,822½ acres of the same, to the said Ward for the sum of 40,000 dollars, payable as follows; 10,000 dollars by their draft on said Ward, to become due and payable in eighty days from that date ; 10,000 dollars by like draft, payable in four months from that date ; 10,000 dollars, payable in six months ; 5,000 dollars, in eight months ; and the remaining 5,000 dollars in twelve months. The contract

then stipulated, that on the payment of each of the three first drafts, F. M. Arredondo and Son would by themselves, or their attorney, execute a quit claim deed for 25,000 acres of said land to Ward or his trustee, as he might direct; on the payment of the fourth draft for 5,000 dollars, the further quantity of 33,000 acres; and on the payment of the fifth or last draft, the residue, being 36,822½ acres. The contract then further stipulated, that F. M. Arredondo and Son would contribute their proportion of the expense of obtaining the Indian title, and also the whole expense of the original survey of the tract; the sub-survey for dividing the tract, to be equally borne by the parties, the said sub-survey to divide the whole tract into about twelve equal parts, to be drawn for by lot by the parties interested.

The bill further stated, that the complainant had paid the defendants, on account of the said contract, at the times specified in a schedule annexed to the bill, the sum of 35,107. 38 dollars and the bill charged, that it was the intention of all the parties to the said contract, that the complainant should be the purchaser of one half of the tract of land mentioned in the contract, which was described in the Spanish grant, as containing 289,645⁴⁄₇ acres, but which was afterwards found to contain a surplus of 78,995 acres, one half of which the complainant claimed on special grounds, mentioned in the bill.

The bill then stated, that the delay in making the payments, according to the letter of the contract, was owing to the Arredondos having transmitted deeds imperfectly executed, which there was a necessity of returning to Havanna, before they could be perfected; that the complainant explained those delays at the time, to the Arredondos, who were satisfied therewith, as would appear by their having subsequently transmitted better conveyances and drawn for moneys in virtue of the contract; that the complainant having paid upwards of 35,000 dollars, became entitled to conveyances for 108,000 acres; and that the Arredondos had only conveyed 90,720 acres as particularly stated.

The bill claimed, that the Arredondos, upon the payment of the remaining moneys due on the contract, ought to convey the residue of the lands mentioned in the contract, and also

the just proportion of the surplus lands which the grant had been found to contain; but that they had refused to convey either, unless the complainant would pay them a further sum of 12,000 dollars, which was inequitable, as there was less than 5,000 dollars due on the contract; the complainant having paid on account of expenses, which by the contract were chargeable to the Arredondos, various sums amounting to upwards of 5,000 dollars.

1824.

WARD
v.
ARREDONDO.

The bill further stated, that the Arredondos had transmitted to the defendant Thomas, a deed dated the 11th of February 1822, executed by them, purporting to convey to the complainant the residue of his share or part of the lands mentioned in the contract, and also one half of the surplus land; that the said deed was in the possession of the said defendant Thomas; that the complainant had applied for the delivery thereof, and had offered to pay whatever might be due to the Arredondos under the contract; that Thomas refused those offers on the ground, that he was instructed to demand 12,000 dollars, and not to deliver the deed in question, until the same was paid; that the complainant had previous to the filing of the bill, tendered to Thomas 5,000 dollars, as being more than the amount due to the Arredondos, and demanded the deed, and now offered to bring the money into court.

The bill further stated, that inasmuch as the Arredondos resided at Havanna, and as Thomas had threatened to return the deed in question to them, and inasmuch also as the said complainant had paid nearly the whole of the consideration money specified in the contract, and had tendered the balance, and was willing to come to an account with the Arredondos, and to pay to Thomas whatever may be found due to them, the complainant prayed injunctions against the defendants Arredondos, to restrain them from exercising any control or ownership over the deed, and also against the defendant Thomas, to restrain him from parting with the deed or sending it back to Havanna, until the further order of the court, and also for general relief and process of subpoena.

On the filing of the bill, his honor judge Edwards granted the injunctions according to the prayer of the bill, and they were duly issued and served.

The defendant Thomas appeared to the bill, and filed his first answer on the 17th of January 1824; by which he admits the contract as stated in the bill, and that he had received a deed or conveyance from the Arredondos to the complainant, for the residue of the land mentioned in the contract, and one half of the surplus land in the grant, amounting together to about 93,600 acres as stated in the bill; that the Arredondos in a letter to Thomas, which accompanied the deed, stated, that the complainant was indebted to them in a large amount, but that willing to avoid controversy, they had authorised the defendant to deliver the deed in question to the complainant upon the receipt of such sum in addition to a balance of principal, of about 5,000 dollars remaining due upon the contract, as the defendant Thomas might think proper to require. It admits the tender of the 5,000 dollars, and says, that the defendant had received instructions from the Arredondos to return the deed to them.

This answer was excepted to, and on the 15th day of February 1824, the defendant filed his further answer, in which he admits, that the Arredondos had received payments on account of the lands mentioned in the contract, to 35,107.38 dollars, as stated in the bill, and says, that those payments were made in various sums and at different times, mostly after the expiration of the time for that purpose stipulated in the contract. This answer also raised various other questions as to the account between the parties.

The answer admits, that the Arredondos made such partial performances of the contract on their part, by executing such letters of attorney and conveyances as are stated in the bill; and that he the defendant, had refused to deliver the deed sent to him from Havanna, unless the complainant would pay to him 15,000 dollars, which he believes was the sum required by him, and not 12,000 dollars, as stated in the bill, which sum he also believes would fall short of the sum due to the Arredondos for losses and damages on account of the contract; he also admits, that when the 5,000 dollars were tendered to him, he did intimate that a larger sum was due to the Arredondos, but that if he had been requested to state an account of it, he would have refused, because he had no authority from the

Arredondos to settle or state an account, and was only authorised to deliver the deed to the complainant upon certain terms, with which he refused to comply.

The defendants Arredondos having refused to appear voluntarily to the bill, an order was entered on the usual affidavit, on the 9th of February 1824, requiring them to appear and answer in nine months, or that the bill would be taken pro confesso against them.

On the same day, the solicitor of the defendant Thomas, gave notice of a motion to the circuit court at the then next term, (fourth Monday of February) to dissolve the injunction and dismiss the bill with costs ; which motion was to be founded on the bill and answers, and on an affidavit therewith served, stating among other things that the defendant Thomas had no interest or connection with the parties to the suit, except by the receipt and possession of the deed mentioned in the pleadings, which he had no right to detain, except by virtue of the injunction, and also an affidavit stating facts tending to show a delay in the prosecution of the suit, and that the defendants Arredondos resided in foreign parts, and had not been in the United States since the filing of the bill.

The motion was argued before the circuit judge on the 23d day of February last, upon the merits, (the supposed delay having been explained and accounted for by affidavits which it is not material to state,) by Messrs. H. D. and Robert Sedgwick, in support of the motion, and Mr. C. Graham against it.

On the 10th of May last, judge Edwards delivered his opinion, that he had no jurisdiction in the cause, as the land in controversy lay in East Florida, and as the defendant F. M. and T. Arredondo, resided without the United States, and were not then, nor at any time subsequent to the filing of the bill within this state ; that the other defendant Thomas had no interest in the same ; and that making him a party was not sufficient to sustain the jurisdiction of the court. On the 13th day of the same month the judge made a decree dissolving the injunction, from and after the first day of July then next ; being prospective in order to enable the complainant to appeal from it.

The complainant appealed from that decree to the chancellor, and the cause now came on to be argued.

MESSRS. COLDEN and C. GRAHAM for the appellants, contended, that the facts appearing by the pleadings, made a proper case for relief in a court of equity.

1st. As the bill was for a specific performance.

2d. As it was for an account.

3d. On the ground of fraud.

[Much of the argument related to the particulars of the contract, and to the account, which we omit.]

3dly. The bill is a bill for relief against fraud ; not as moral fraud. The Arredondos have received 35,000 dollars of the appellant's money under contract, for which he ought to have received more than 108,000 acres, even supposing he could claim no more than the 144,822½ acres mentioned in his contract ; but only 90,920 acres have been conveyed to him, leaving a residue of upwards of 17,280 acres unconveyed, for which the Arredondos have received payment, and with one half of the surplus lands, making 93,600 acres, for which the complainant claims to have been entitled to a conveyance on the tender they lately made and stated in the bill. The conveyance in the hands of Thomas is precisely for this quantity. This circumstance shows very clearly, the understanding of the parties as to the contract ; and it very clearly shows also, that there is no dispute between them, as to title, but only as to the account.

To refuse to convey when a party ought, according to contract, or unjustly to withhold the deed in question, is in contemplation of a court of equity, a fraud, against which it is the province of such a court to relieve. Though a fraud complained of, says lord chancellor Talbot, be not properly a deceit, but only such an act as lays a particular burden or hardship on another, it is relievable in equity. Bosonquett v. Dashwood, ca. temp. Talbot, 38. 40. Chesterfield v. Janssen, 2 Ves. 155.

The appellant contends, that though the lands are not within the jurisdiction of the court, and the Arredondos are not within the reach of its process, yet the court having it in its

power to do equity, and to grant the relief asked, will exercise that power.

It is generally said in the books, that where neither the lands nor the parties are within the jurisdiction of the court, it will not hold jurisdiction of the case. This is certainly true, where the object of the bill is to try the title to lands, or where execution is asked which will touch the lands or the persons of the defendants. In such case, the court will not hold jurisdiction, because the titles must be tried by the lex loci rei sitæ; and because it would be nugatory to hold jurisdiction, when a decree could not be enforced. But where a question as to lands, is merely collateral, and where the process of the court is competent to enforce its equitable decree, a court of equity will hold jurisdiction though neither the lands nor the parties are within reach of its process; as in this case, there is no question as to title. The title is completely admitted. The question is only as to account and payment, and the court having it in its power to do justice by settling the account and decreeing a delivery of the deed, will not hesitate to compel that delivery, if equity requires that it should be delivered.

In an anonymous case in 1 Atkyns 18. the bill was to have an allowance for the support of children, out of stock which was in England. The parties were out of the kingdom. The lord chancellor said, "I have no power over the parties, as "they are in foreign countries, but though I can not come at "their persons, yet I may lay my hands on any property they "may have here in stock."

The circumstance that a question of title (as to lands out of the jurisdiction) may be involved in the enquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest the jurisdiction of the court. 6 Cranch 149. A court of equity in England will relieve against a fraudulent conveyance of lands in Ireland. "As to the objec-"tion, says the lord chancellor, that the court was deficient in "power to compel a performance of its decree, because it could "not sequester the lands in question, I look upon that as of no "weight." Arglasse v. Muschamp, 1 Vern. 75. 135. S. C. Archer v. Preston. 1 eq. ab. 133. c. 3. and 1 Vern. 77. Fos-

ter v. Vassall 3 Atk. 587.    Roberdeau v. Rouse, 1 Atk. 543.
Penn. v. Lord Baltimore, 1 Ves. 444.    Lord Cranstown v.
Johnston, 3 Ves. jun. 182.    Hayes v. Ward 4 John. ch. 134.
Livingston v. Ogden and Gibbons, 4 John. ch. 48.    Dale. v.
Roosevelt, 5 John. ch. 174.

These are cases which tend to establish the principle, that
where a question as to lands is collateral to the object of the
bill, the court will grant relief though the lands be in a foreign
jurisdiction.

In most of these cases, the lands were not within the juris-
diction of the court; the defendants were.    But this can make
no difference as to principle.    It is every day's practice of the
court, to proceed against absent defendants, where justice can
be done, though they are not within reach of the process of the
court.    A court of chancery proceeds upon the supposition,
that there is such a relation between persons and things, that
a proceeding against a thing within its jurisdiction, will after
reasonable publication be notice to the person connected with
the thing.    As in this case, the proceeding to acquire posses-
sion of the deed, and against the person actually holding it,
will after the publication the court has ordered, be taken to
be notice to the parties interested in the deed.

That the title to the lands, is here merely collateral, or indeed
does not come in question at all, is manifested by supposing,
that the land and the persons were within the jurisdiction of
the court, or that the court was sitting in Florida : no question
as to title could be agitated.    The questions then would be,
as they are now; that is, questions as to specific performance,
account and fraud.    These, this court is as competent to de-
cide, as any other forum could be.

But the court below did not dissolve the injunction on the
ground of want of jurisdiction; on the contrary, the judge
repeatedly said, he had no doubt that he had jurisdiction of the
case.    But he decided against the appellant on the ground that
a delivery of the deed by order or decree of the court, would
be a void delivery.    In answer to this it is sufficient to say,
that every specific performance which requires a conveyance,
or the delivery of a deed made pursuant to a decree, would, if

this objection be well founded, be inoperative, because it would be made against the will of the party.

Messrs. H. and R. Sedgwick, for the Respondents.

1. The court has no jurisdiction of this cause. The defendant Thomas, who only has appeared, has no interest in the subject. The contract was made in Havanna; the land lies in Alabama, and the Arredondos, who only have any interest in the question, have not appeared, and are not within reach of the process of the court. They owe no allegiance to our government. There is no principle of public right, no statute law, by which they can be called from abroad, to defend their rights here.

It is also against sound public policy. If this court can entertain jurisdiction of the cause, the courts of other states and countries, may do the same. There may also be a suit now depending at Havanna, on the same contract. Thus there may be many suits on the same subject, and conflicting decisions on the right.

This is farther illustrated by the particular character of this contract. Here are various payments to be made, and on each a deed to be executed for part. If these different deeds should happen to arrive in as many different states, there would be in each the like claim of jurisdiction.

As to the ground alleged, that the deed is in this country, we answer, that the deed is not here in question. The suit is for an account, and would be equally sustainable, if all that relates to the deed, were struck out of the bill.

The defendant Thomas is not charged with any fraud, and whatever decree the complainant can get against him, affords no remedy. Then if he goes farther, and asks a decree affecting the Arredondos' rights, the objection perpetually recurs, that they are not in court, and owe no obedience to the decree, and that their rights can not be affected by it.

The case cited from 15 John. was a divorce granted in Vermont, between parties married in this state and domiciliated here, and removing to Vermont temporarily, in fraud of our laws. In that in 1 Vern. the defendant was in England, and that objection was finally waived. So in Doe v. Rous and in 3 Atk. the defendant was in England. In 3 Ves. the contract was

29

between parties in that country. In 1 Vesey, Penn v. lord Baltimore, both parties were in England. In 4 John. ch. this objection was not taken, and in the case of Rosevelt v. Fulton, both parties were in this state. No case can be shown, where a foreigner has been brought into a court to contest his rights, unless either the person of the defendant or the property in controversy are within the country of the forum.

To give a foundation for jurisdiction, there must then be one of three things. 1st. the person must be within the reach of the court; or 2d. the subject to which the contract or fraud relates must be here; or 3d. the cause must be in the forum of a government which has some superior jurisdiction, over that of the country in which the subject is situated; as in the case of the Isle of Sark or of Ireland. If in an independent country, as France or Austria, there is no precedent for it in the English chancery.

The case in Cranch may seem to be an exception to this rule; being a suit in Kentucky regarding Ohio lands; but there the supreme court of the united states had a paramount jurisdiction over both states. There too the defendant was in the jurisdiction of Kentucky, and that circumstance was relied upon, both in the principal case, and in all these cases which were then reviewed.

As to the deed being within the jurisdiction; it is merely an escrow as yet. To be perfected, Thomas must, as the agent of the principal, make a delivery. But if he delivers by compulsion, or on terms different from the conditions on which it was delivered as an escrow, it will never be the deed of the Arredondos. How then can it bind them, or their representatives? How will it affect those persons, who may receive subconveyances? Can this court insure the protection of their titles in the courts of Alabama?

As yet the deed is an inchoate act. Suppose then, instead of a deed, it were only a power to make a deed; could this court compel the attorney in fact, to act under that power?

Finally: If it be admitted, that the deed is the only foundation on which the jurisdiction can rest, then that fails, because there is a remedy at law. Trover or detinue would lie.

THE COURT. This in effect, is a bill to enforce a specific performance of the contract, by laying hold of the deed, which is within the jurisdiction of the court.

If the land and all parties were within the jurisdiction, it would be the ordinary case. The peculiarity is, that the land and the only party defendant, who has an interest, is out of the jurisdiction, and on this, the objection rests.

I was at first, inclined to think, that this was carrying the jurisdiction of the court, farther than has ever been done ; but the peculiarities of the case, are such as make a difference in circumstances, not in principle.

An objection has been made, that there may be different suits under different jurisdictions, and thence, that there may be conflicting decisions. It is very true, that none but the courts of Alabama can determine the title to the land in the last resort ; but this objection proves too much. It would prove, that no suit can be entertained on this contract, except in Alabama. The elementary principle seems to be, that the jurisdiction may be upheld, wherever the parties, or the subject, or such a portion of the subject, are within the jurisdiction, that an effectual decree can be made and enforced, so as to do justice between the parties. Suppose then, the parties to the suit were reversed, and that the Arredondos sought here, to enforce payment from Ward. They might do so ; Ward is here, and is subject to a decree, and perfect justice might be done.

The principle is that the jurisdiction may be upheld, whenever the parties, or the subject, or such a portion of the subject are within the jurisdiction, that an effectual decree can be made and enforced, so as to do justice.

The dispute then, is about a personal contract, which is transitory, and may be enforced in any country. To enforce it here, encroaches not upon the jurisdiction of Spain or Alabama. The deed is here subject to our jurisdiction ; that deed is such a portion of the subject in question, that by acting upon it, the court may decide the controversy, and do complete justice between the parties. And to do so, is going no farther than has been done by the English court of chancery, and in the case in this country, cited from Cranch.

The case comes up on an appeal from a circuit court, and on an interlocutory order. By the statute, the cause must be remanded with the order of this court. The order therefore, will be, that the circuit court retain the injunction until the hearing.

On appeal from an interlocutory order of a circuit court, the cause is to be remanded with the order of this court.

1824.

*WARD*
*v.*
*ARREDONDO.*

ing, or until the equity of the bill shall be sufficiently denied by the defendants who are interested.

This opinion is to be considered as provisional, and as applicable to the state of the question as now presented, on a motion to dissolve the injunction ; in which some weight may be allowed to the circumstance, that a dissolution of the injunction would in effect, be final. This decision will not therefore, preclude the party upon the final merits.