THOMAS M. HODGENS, Plaintiff, *v.* THE COLUMBIA TRUST Co. et al., Defendants.

(Supreme Court, New York Special Term, May, 1918.)

Jurisdiction — how acquired — contracts — actions — service by publication — injunctions — corporations — nonresidents — parties — pleading — Code Civ. Pro. § 438(5).

 The sale of certain corporate stock, under a contract between plaintiff and one of the defendants, a foreign corporation, was to be contingent upon the consent of certain of the stockholders, and to secure performance said defendant deposited the stock with the other defendant, a trust company, and plaintiff deposited his notes for the purchase price, and certain bonds as collateral, and to facilitate a sale of the bonds to a third party under an independent contract they were, by a supplemental agreement, replaced by a receipt therefor. In an action for the cancellation of agreement of sale and deposit, delivery to plaintiff of the notes and the receipt for the bonds,

an injunction *pendente lite* was asked against any sale or transfer of the notes and bonds, a receiver, and for general relief. The day after service of the summons upon the defendant trust company it, upon being indemnified, delivered the notes and the bonds to the other defendant which removed them from the state. Upon denying a motion to set aside an order for service of the summons by publication upon the foreign corporation defendant, made on the theory that the action was exclusively *in personam,* hence service by publication was unauthorized, and that if in any respect the action could be deemed one *in rem* such service of the summons was a nullity since there was no seizure of the *res* by attachment, receivership or otherwise, and the *res* was not within the territorial jurisdiction of the court at the time of the granting of the order of publication or the service thereunder, *held:*

The plaintiff, though a nonresident, had a right to sue the foreign corporation defendant provided jurisdiction over it could be obtained, and, there being no personal service of the summons, the only jurisdiction acquired, if any, must be *in rem* or *quasi in rem.*

So far as the complaint seeks to nullify the agreement for the sale of the stock the relief demanded was purely personal and upon the facts alleged the action will not lie.

The action being in the nature of equitable replevin to recover possession of the bonds deposited as collateral and of the notes as well, with incidental relief, was clearly one *quasi in rem* and the court by publication could obtain jurisdiction to determine the foreign corporation defendant's interest in and to award plaintiff possession of the *res* provided that at the time of publication the court had jurisdiction over the *res* and in this respect the action comes within the provision of section 438(5) of the Code of Civil Procedure.

As jurisdiction may be acquired in actions *quasi in rem* by service of initial process upon a party though he may be a mere stakeholder, jurisdiction of the *res* was acquired when service of the summons was made upon the defendant trust company while it was still in possession of the notes and the certificates representing the bonds.

The court having acquired jurisdiction of the *res* was not deprived thereof by reason of the subsequent removal of the *res* from the state and the court may proceed to adjudicate the rights of the parties.

MOTION to set aside order for service of summons by publication.

Blackwell Bros, for plaintiff.

Davies, Auerbach & Cornell, for defendant Columbia Trust Co.

Sullivan & Cromwell, for defendant Fidelity Title and Trust Co.

HOTCHKISS, J.   The action is based on the following facts:   Plaintiff entered into an agreement with the defendant Fidelity Title and Trust Company of Pittsburgh whereby the Fidelity Company was to sell and deliver certain shares of stock to the plaintiff on a future date, the sale to be contingent upon the consent of certain other stockholders.   To secure performance the Fidelity Company deposited the stock with the defendant Columbia Trust Company (or its predecessor), and the plaintiff deposited his notes for the purchase price and certain bonds as collateral.   To facilitate a sale of the bonds to a third party under an independent contract the bonds were subsequently, by a supplemental agreement, replaced by a receipt therefor.   The relief demanded is a nullification of the agreement of sale and deposit, delivery to plaintiff of the notes and the receipt for the bonds, an injunction *pendente lite* against any sale or transfer of the notes and bonds, a receiver and for general relief.   The action was commenced on November 20, 1917, by service of summons on the defendant Columbia Trust Company, which was at that time in possession as depositary of the notes and the receipt for the bonds. On the following day, November 21st, the Columbia Company, upon being indemnified, delivered possession of the notes and bonds to the Fidelity Company, which

27

removed them to Pennsylvania. Thereafter plaintiff secured an order for service of the summons by publication on the Fidelity Company as a foreign corporation and completed service accordingly. The Fidelity Company, appearing specially, now moves to set aside the order. The theory of the Fidelity Company is that the action is exclusively *in personam* and hence service by publication is unauthorized, and that if the action may in any respect be deemed one *in rem* the service by publication is a nullity, since there was no seizure of the *res* by attachment, receivership or otherwise, and the *res* was not within the territorial jurisdiction of the court at the time of the making of the order or the service thereunder. Concededly the cause of action arose in this state, thus giving the plaintiff, even though a non-resident, the right to sue the Fidelity Company, provided jurisdiction could be obtained. There being no personal service, the only jurisdiction acquired, if any, must be *in rem* or *quasi in rem.* So far as the complaint seeks to nullify the agreement of sale, the relief demanded is purely personal. Moreover, no action in equity, at least upon the facts alleged in the complaint, would lie merely to cancel such agreement. The portions of the complaint which contain the elements of equitable jurisdiction are those by which the plaintiff seeks to relieve his bonds or the receipt representing them from the lien or burden to which they were subjected by reason of the apparent right of the Fidelity Company to enforce or avail itself of the terms of the agreement by which the bonds (or the receipt, their substituted equivalent) were deposited as collateral for the notes, and to secure possession of the bonds, if not of the notes as well. The action is in the nature of equitable replevin, with incidental relief. The action was thus clearly one *quasi in rem,* and it would follow that the court could by publication secure juris-

diction to determine the Fidelity Company's interest
in and to award plaintiff possession of the *res,* pro-
vided the court, at the time of publication, had juris-
diction over the *res.* *Chesley* v. *Morton,* 9 App. Div.
461; *Freeman* v. *Alderson,* 119 U. S. 185, 187. See
also, Field, C. J., in *Galpin* v. *Page,* 9 Fed. Cas. 1138.
The action in this respect comes within the provisions
of section 438 of the Code, whereby: "An order direct-
ing the service of a summons upon a defendant, by
publication, may be made in either of the following
cases:  *  *  *  5. Where the complaint demands judg-
ment, that the defendant be excluded from a vested or
contingent interest in or lien upon, specific real or per-
sonal property within the state; or that such an interest
or lien in favor of either party be enforced, regulated,
defined, or limited; or otherwise affecting the title to
such property." The questions presented are (1)
whether jurisdiction was acquired by personal service
upon a mere depositary of the *res* and without a formal
seizure by attachment, receivership or equivalent, and
(2), if jurisdiction was thus acquired, whether it per-
sists in spite of the subsequent removal of the *res* from
the territorial jurisdiction of the court. Counsel have
referred me to no decided cases, and there is little, if
any, direct authority upon these questions, apparently
for the reason that in similar actions some form of
seizure is generally available and is usually made. See
21 Am. & Eng. Ency. of Law, 628. Subdivision 5 of
section 438, quoted above, does not in terms require
a seizure of the *res.* It is necessary, therefore, to con-
sider the case in the light of the elementary principles
of jurisdiction. The jurisdiction here in question is the
initial jurisdiction the acquisition of which empowers
the court to proceed to a determination of rights *in per-
sonam* or *in rem.* Having acquired jurisdiction, the
court must of course proceed according to the pro-

cedural requirements of the law in order to render a valid judgment, but such requirements, though regarded as jurisdictional, are not jurisdictional in the strict sense of the word as I now use it and as involved upon this motion. The state has absolute jurisdiction over persons and property within its borders, except as limited by the Federal Constitution. Story Confl. of Laws (8th ed.), §§ 20, 388, 390; *Pennoyer* v. *Neff,* 95 U. S. 714, 722; *Cona* v. *Henry Hudson Co.,* 86 N. J. L. 154, and cases cited. The court is the creature of the state and its jurisdiction is therefore necessarily limited to such as the state has power to confer. There is no reason inherent in the nature of judicial proceedings why a court should not, by the mere assertion of jurisdiction, become empowered to proceed to a determination of any justiciable matter within the territorial jurisdiction of the state. In so far as restrictions are placed upon the court's acquisition of such jurisdiction, they are traceable to the federal requirements of due process and to such further requirements by way of seizure of property and notice to persons as the state may impose upon its courts whether by constitution, statute or by the common law as adopted by the state. Because of these restrictions questions of jurisdiction may involve any or all of the three elements of (1) *assertion* of jurisdiction in some formal way; (2) *notice* to persons in interest, and (3) the *seizure* of property involved. But an examination of the authorities would seem to show that *assertion* remains as the one indispensable requisite. Assertion rests upon the power of the state. An absolute and unyielding requirement of seizure or notice would in many cases amount to a virtual surrender by the state of its power over persons and property within its borders. Notice and seizure are not primarily questions of power; they are measures of manifest justice

and precaution. Whenever notice or seizure is impossible or impracticable, the necessity that the state retain its sovereign powers overrides the requirements of justice or precaution, and seizure and notice will in consequence be dispensed with, leaving assertion as the only actual element by which, so to speak, the jurisdiction *in posse* of the state becomes the jurisdiction *in esse* of the court. See *Cona* v. *Henry Hudson Co., supra; Heidritter* v. *Elizabeth Oil Cloth Co.,* 112 U. S. 294, 301, 302; *Arndt* v. *Griggs,* 134 U. S. 316. A few illustrations will suffice. In actions *in personam,* it is the general rule of the common law that personal service must be effected. Such a service is at once an assertion of jurisdiction and notice thereof. But when the place of sojourn of a resident defendant cannot be ascertained, or he avoids service, the action may be commenced by the substitutes for personal service adapted to the circumstances (*e. g.,* see Code Civ. Pro. §§ 435, 436). The prescribed methods of such service are designed to afford a reasonable probability that actual notice will reach the defendant. But jurisdiction attaches regardless of notice in fact. *Matter of Empire City Bank,* 18 N. Y. 199, 215, 216. Constructive notice is a mere fiction, and it is obvious in such a case that the only substantial element upon which the court is empowered to act is the formal assertion of jurisdiction. The statutory provisions for substituted service are based on common-law principles; they are effective *in personam,* and are not a violation of the constitutional requirement of due process. *Continental Nat. Bank* v. *United States Book Co.,* 74 Hun, 632; affd., 143 N. Y. 648; *Burton* v. *Burton,* 45 Hun, 68; *Johnston* v. *Robins,* 3 Johns. 440. Similarly, in actions or proceedings *in rem* or *quasi in rem,* neither notice nor actual seizure of the *res* is inherently necessary in order to place

the *res* within the power of the court. Statutory provisions as to seizure are in many cases permissive only, and when mandatory are designed as a measure of precaution so that the judgment may be made practically effective as well as legally binding, and as a measure of justice by way of probable notice to persons in interest or to persons who may seek to acquire interests *pendente lite.* In the absence of specific statutory provisions there is no rule of general application requiring the seizure of the *res* in actions *in rem* or *quasi in rem.* This will readily appear upon a consideration of the law of attachment, garnishment, judgment creditors' actions, *lis pendens* and the like. Attachment suits in which jurisdiction of the debtor himself is not obtained are *quasi in rem.* The court acquires jurisdiction by levy of the writ upon a *res* within the state. *National Broadway Bank* v. *Sampson,* 179 N. Y. 213, 222. The levy is an assertion, and in many cases a seizure as well. But it would seem to be apparent that assertion is the fundamental element, since the seizure may in numerous cases be merely nominal. A fictitious seizure cannot be accurately characterized as anything more than an assertion of jurisdiction. Nor is notice essential in the first instance to the acquisition of jurisdiction. The statutes usually provide for service by publication on non-residents, following the levy, but jurisdiction attaches before the service is effected and, furthermore, it is quite immaterial whether in fact the service operates to give actual notice. *Blossom* v. *Estes,* 84 N. Y. 614; *Penoyar* v. *Kelsey,* 150 id. 77; *Cooper* v. *Reynolds,* 10 Wall. 308; *Pennoyer* v. *Neff,* 95 U. S. 714; *Paine* v. *Mooreland,* 15 Ohio, 435; *Gilman* v. *Thompson,* 11 Vt. 643; *Quarl* v. *Abbett,* 102 Ind. 233; 2 R. C. L. 802. In *Ward* v. *Boyce,* 152 N. Y. 191, 196, the court, considering attachment proceedings, said: " If the proceedings involve the determination of the

personal liability of the defendant, he must be brought within the jurisdiction by service of process within the state, or voluntary appearance  If it be a proceeding *in rem,* the *res* must have been seized or attached, *or at least must be within the jurisdiction."* In *Jarvis* v. *Barrett,* 14 Wis. 591; *Winner* v. *Fitzgerald,* 19 id. 393, and *Rice, Stix & Co.* v. *Peteet,* 66 Tex. 568, it was held that the attachment statutes in question permitted but did not require seizure, and that jurisdiction *in rem* was maintainable without seizure.   The conclusion would seem to be clear that in attachment suits operating *quasi in rem* the one indispensable requirement for the acquisition of jurisdiction is assertion, assuming, of course, that the *res* is within the state at the time of such assertion.   Where actual seizure is required in certain cases of attachment, it will be found to be because of specific statutory provision.  An examination of the law of *lis pendens* fortifies the conclusion that the basic power of the court to acquire jurisdiction of a *res* lies in assertion and does not depend upon seizure or notice.  The doctrine of *lis pendens* operates to invest the court with complete control over alienations or attempted alienations of interest in the *res pendente lite,* and as well to render its judgment binding upon alienees as though they were parties.   The doctrine rests principally, of course, upon the absolute power of the state over the *res,* and, secondarily, on the assumption that the hardship of the doctrine as to alienees is outweighed by the necessity of enabling the court to carry into effect any decree it may make concerning the matter in issue.   2 Pom. Eq. Juris. (3d ed.) 1060, 1082; *Hovey* v. *Elliott,* 118 N. Y. 124, 135; *Holbrook* v. *New Jersey Zinc Co.,* 57 id. 616, 627.  Originally at common law the commencement of an action at law by *teste* of the writ, or of a suit in equity by *teste* of the subpoena, was deemed the initiation of *lis pendens.*

In other words, the mere *teste* gave jurisdiction as against subsequent alienees, without anything in the nature of notice or seizure. The hardship of this rule was subsequently (1705) relieved to some extent by statute (4 Anne, chap. 16, § 22) providing that no sub-poena should issue until after bill filed, and this rule was extended to actions at law. Under the common law as adopted by us, it was accordingly held that *lis pendens* commenced upon the filing of the bill or declaration and service of process. · 21 Am. & Eng. Ency. of Law, 609, 610; *Leitch* v. *Wells,* 48 N. Y. 585, 601 *et seq.* With respect to realty the harshness of the rule has been further lessened in this as in most states by statute requiring the filing of a bill or complaint and a notice of *lis pendens* adequately describing the property, though at the same time providing that such filing shall constitute a *lis pendens* even though process be not served until later. See Code Civ. Pro. §§ 1679, 1671. It may be noted in passing that once the necessary papers are filed their subsequent loss or destruction will not affect the *lis pendens. Heim* v. *Ellis,* 49 Mich. 241. With respect to personalty, however, the rule of the common law still obtains. *Leitch* v. *Wells, supra,* 602. This is true, although the extent of the application of the doctrine to personalty in this state is in doubt (see *Holbrook* v. *N. J. Zinc Co.,* 57 N. Y. 616, 629 *et seq.*), and the precise time when the action, in case of service by publication upon a sole defendant, is deemed to have been commenced, may now, under the Code, be still unsettled. It is also still the law, both as to realty and personalty, that jurisdiction as against alienees attaches without seizure of the property and regardless of actual notice. Illustrations of the power of the court to assert jurisdiction might be multiplied (see *e. g., Van Alstyne* v. *Cook,* 25 N. Y. 489, 496), but the underlying principle has been sufficiently shown. For the decision

of the present case it remains to be seen whether there was a timely assertion of jurisdiction, inasmuch as the *res* had been removed from the state before publication of the summons had been ordered, much less commenced or completed. If the Fidelity Company were the sole defendant the answer to this question would plainly be in the negative. But the service of summons had been made upon the Columbia Company while it was still in possession of the notes and the certificates representing the bonds. That the Columbia Company was a proper, if not a necessary, party to the action cannot be questioned. I think it is plain that jurisdiction of the *res* was acquired when service was made upon the Columbia Company. The action, *qua* action, was then commenced and jurisdiction over the *res* was asserted. That jurisdiction may be acquired in actions *in rem* or *quasi in rem* by service of initial process upon a party, although he be a mere stakeholder, is not to be doubted. It is upon this principle that jurisdiction of debts deemed to be within the state is acquired in garnishment proceedings by service upon the garnishee, and in such proceedings notice to the defendant may be given subsequently by publication or otherwise. See *Martin* v. *Central Vt. R. R. Co.*, 50 Hun, 347; *Ward* v. *Arredondo,* 1 Hopk. Ch. 213. The question remains whether the court, having acquired jurisdiction of the *res* by service on the Columbia Company, was deprived of jurisdiction by reason of the subsequent removal of the *res* from the state. That such removal will render abortive any attempt on the part of the court to make any decree which will be operative on the *res* itself, so long at least as it is kept out of the state, is manifest. For reasons already suggested there is a scarcity of authority directly upon the question. But on principles analogous to those applied in actions *in personam* I think the court may proceed to adjudicate upon the rights of

Supreme Court, May, 1918.          [Vol. 103.

the parties. In actions strictly *in personam* jurisdiction rests upon the presence of the person at the time of assertion, and the power of the court to proceed to judgment is in nowise affected by a removal of the person from the state. Similarly in actions *quasi in rem* jurisdiction rests upon the presence of the *res* at the time of assertion, and no reason appears why the power of the court to proceed to a determination of the rights of the parties in the *res* should not be absolute as its analogous power in actions *in personam*. See *Freeman* v. *Alderson*, 119 U. S. 185. In actions *quasi in rem*, where pending the litigation the *res* passes into the control of the United States courts in bankruptcy, there is no loss of jurisdiction over the parties, and the litigation may be continued to determine their rights in the *res*. *Schoenherr* v. *Van Meter*, 215 N. Y. 548, 553; *Skilton* v. *Codington*, 185 id. 80, 85, 86. In *Fletcher* v. *Ferrel*, 39 Ky. 372, the court deemed a Tennessee decree valid and effective *in rem* under the law of *lis pendens*, although the decree determined the title to certain slaves which were within the state of Tennessee at the commencement of the action, but were removed to Kentucky *pendente lite*. The case is cited only as to the effect of removal. It does not accord with New York law as to the extraterritorial effect of *lis pendens*. *Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. 616, 625. " The general rule on the subject of jurisdiction is that it depends on the state of things at the time the action is brought; and if the circumstances be such, then, as to invest jurisdiction, the same cannot be ousted by any subsequent event." *Koppel* v. *Heinrichs*, 1 Barb. 449, 451. And see 12 Ency. Pl. & Pr. 171, and cases cited. For the foregoing reasons the motion is denied, with ten dollars costs.

Motion denied, with costs.