ADAM J. LEDWICH, Respondent, *v.* HASLETT McKIM et al., Appellants.

Upon the sale and assignment of a non-negotiable written instrument there is an implied warranty of title in the assignor, and upon failure of title he is liable.

The rule that the *bona fide* holder of an incomplete instrument, negotiable but for some lack capable of being supplied, has an implied authority to supply the omission, and to hold the maker thereon, only applies where the latter has by his own act, or the act of another, authorized, confided in or invested with apparent authority by him, put the instrument in circulation as negotiable paper.

* The residue of the opinion is devoted to the discussion of questions of fact and of questions as to the reception and rejection of testimony, etc., which were not deemed by the court of interest save to the parties.—REP.

Accordingly, *held*, where the bonds of a railroad corporation, conditioned for the payment of either of two specified kinds and amounts of national currency, to be determined by the place to be fixed for their payment, which bonds contained a clause authorizing the president of the corporation to fix by his indorsement such place of payment, and which had been indorsed in blank by the president, but while still in the possession of the corporation were stolen, that a *bona fide* holder was not authorized to fill the blank, and that he acquired and could convey no title to the bonds.

Where the summons in an action is for money, and the complaint sets forth facts which make out a cause of action, *ex contractu*, the presence of averments of fraud in the complaint does not make the action one *ex delicto*.

(Argued May 27, 1873; decided September 23, 1873.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York in favor of plaintiff, entered upon an order denying motion for a new trial and directing judgment on a verdict.

This action was brought to recover back the purchase-money alleged to have been paid to defendants by plaintiff's assignor, William B. Scranton, upon the purchase of certain railroad bonds, upon the ground of failure of title.

On the 16th of October, 1865, William B. Scranton, plaintiff's assignor, bought of defendants ten instruments, purporting to be bonds of the Vicksburg, Shreveport and Texas Railroad Company, each bearing date September 1st, 1857, and professing to bind the company to pay to bearer "the sum of either two hundred and twenty-five pounds sterling, *or* one thousand dollars, lawful money of the United States of America, to wit: two hundred and twenty-five pounds sterling, if the principal and interest are payable in London, and one thousand dollars, lawful money of the United States of America, if the principal and interest are payable in New York or New Orleans." To each of the instruments were attached forty interest warrants or coupons for the payment of "nine pounds sterling" each if payable "in London," or forty dollars if payable in "New York or New Orleans," the first of said coupons falling due on the 1st of March, 1858,

and one falling due every six months thereafter. In the body of each instrument it is provided that " the president of the company is authorized to fix by his indorsement the place of payment of the principal and interest, in conformity with the tenor of this obligation." Indorsed on each instrument were the words:

" I hereby agree that the within bonds and the interest coupons thereto attached shall be payable in ———.

" C. G. YOUNG,

" *President.*"

Scranton on the same day on which he purchased the bonds of defendants sold them to Scott, Zerega & Co. It subsequently transpired that the bonds had never been issued by the railroad company ; that during the war, viz., in April, 1864, the company's office, at Monroe, Louisiana, had been forcibly entered by United States soldiers, its safe broken open, and the contents, including the bonds in question, carried off. As soon as practicable the company advertised the loss of the bonds, giving notice of the manner of their abstraction, and warning the public that they would not be paid. On learning these facts Scranton, as he testified, called on defendants, tendered them the bonds (which Scott, Zerega & Co. had placed at his disposal), and demanded a return of the consideration money, which tender and demand defendants refused to accept or comply with. Recognizing his liability to refund to Scott, Zerega & Co. the price which they had paid him for the bonds, Scranton assigned to plaintiff his claim against defendants arising out of the facts above mentioned.

Other facts appear in the opinion.

Plaintiff recovered a verdict for the amount paid for the bonds and interest. Exceptions were ordered to be heard at first instance at General Term.

*Samuel Hand* for the appellants. Plaintiff's complaint averred a cause of action arising out of false representations, and he could not turn it into an action for breach of warranty

of title. (*Walter* v. *Bennett*, 16 N. Y., 230; *Butler* v. *Livermore*, 52 Barb., 570.) The bonds were payable to bearer and negotiable, and were valid in the hands of a *bona fide* purchaser against the railroad company. (*Welch* v. *Sage*, 47 N. Y., 143; *Turnbull* v. *Bowyer*, 40 id., 456; *Ingham* v. *Primrose*, 7 Com. B. [N. S.], 82; *Worcester Bk.* v. *Dorchester Bk.*, 10 Cush., 488; *Myer* v. *Dorchester Bk.*, 11 id., 51; *Miller* v. *Race*, 1 Burr., 452; *Bromley* v. *Walker*, 51 Barb., 203; *Swan* v. *Aust. Co.*, 2 H. & C., 184; *Leavitt* v. *Dabney*, 7 Robt., 350; 1 Smith's Ldg. Cas., note to *Miller* v. *Race*, 602–605; *Lardner* v. *Murray*, 2 Wal., 118, and cases cited; Story on Bills of Exch., § 188; Edwards on Bills and Notes, 308–310; Byles on Bills, 8th ed., 124; *Burbridge* v. *Manners*, 3 Campb., 194; *In re Imperial Land Co.*, L. R., 11 Eq., 478; *Cunliffe* v. *Booth*, 3 Bing. N. C., 829; *Raphael* v. *Bk. of England*, 17 C. B., 161.) There is no distinction as to paper completely executed, whether procured from the maker through fraud or theft, or intentionally or unintentionally issued by him. (2 Hurl. & C. Exch. Ch., 184; *Stoney* v. *Ins. Co.*, 11 Paige, 637; *Delafield* v. *State of Illinois*, Hill, 177; *Worcester Bk.* v. *Dorchester Bk.*, 10 Cush., 488; *Myer* v. *Dorchester Bk.*, 11 id., 51; *Ingham* v. *Primrose*, 7 C. B. [N. S.], 82; *Grant* v. *Vaughan*, 3 Burr., 1516; 1 Smith's L. C., H. & W. notes, 602–605; Edwards on Bills, 308, 309, and note; *Saybell's Nat. Bk.*, 4 Abb. [N. S.], 352.) The holder of the bonds, seeing the indorsement of the president in blank, would justly regard himself authorized to fill it up. (*Kitchen* v. *Place*, 41 Barb., 465; *Mich. Bk.* v. *Eldred*, 9 Wal., 544; *Page* v. *Morrill*, 3 Keyes, 117; *Van Duzer* v. *Howe*, 21 N. Y., 531; *Mech. Bk.* v. *Schuyler*, 7 Cow., 336, note; *Greggs* v. *Howe*, 31 Barb., 100.) If the paper, as it appeared, gave to the bearer a complete cause of action, it was negotiable. (3 B. & C., 47, note; 1 Smith's L. C., 603, H. & W.'s notes.) There was no express implied warranty by defendants of the bonds beyond the genuineness of their execution. (Edwards on Bills, 188; 2 Parsons on Notes, 37; *Thomas* v.

*Barton,* 48 N. Y., 199 ; *Chapman* v. *Speller,* 14 A. & E. [N. S.], 621 ; *Morley* v. *Attenborough,* 3 Exch., 500 ; *Andrews* v. *Lee,* 1 Dev. & B. Eq. Ca., 321.) The evidence of the submission and arbitration between Zerega, Scott & Co. and defendants was improperly excluded. (*Diederick* v. *Rechl,* 2 Hill, 271 ; *Wells* v. *Lane,* 15 Wend., 99, 105 ; *Haight* v. *People,* 7 Alb. L. J., 331.)

*James Clark* for the respondent. The instruments in question never having been issued or delivered by the railroad company, never had a valid or legal inception as obligations thereof. (Edwards on Bills and Prom. Notes, 186 ; 1 Pars. on Notes and Bills, 48–51 ; *Hopper* v. *Eiland,* 21 Ala., 714 ; *Chamberlain* v. *Hopps,* 2 Ver., 94 ; *Lansing* v. *Gaine,* 2 J. R., 300 ; *Marvin* v. *McCullum,* 20 id., 288 ; *Clark* v. *Boyd,* 2 Ohio, 56 ; *Clark* v. *Sigourney,* 17 Conn., 511 ; *Abel* v. *Sutton,* 3 Esp. Cas., 108 ; *Coddington* v. *Gilbert,* 17 N. Y., 489 ; *Adams* v. *Jones,* 12 A. & E., 455 ; *Brind* v. *Hampshire,* 1 M. & W., 365 ; *Buckley* v. *Hann,* 5 Exch., 43 ; *Ward* v. *Churn,* 18 Grat., 801 ; 1 Chitty on Pleadings, 483.) These instruments are not negotiable, and cannot acquire validity even by a transfer to a *bona fide* purchaser. (*Foster* v. *McKennon,* 4 L. R., 704, 712 ; 17 Wkly. R., 1105 ; *Whitney* v. *Snyder,* 2 Lans., 477 ; *Gibbs* v. *Linabury,* 22 Mich., 479 ; *Burson* v. *Huntington,* 21 id., 415 ; *Hall* v. *Wilson,* 16 Barb., 548 ; *Coddington* v. *Gilbert,* 17 N. Y., 489 ; *Campbell* v. *Nichols,* 4 Vroom [N. J.], 81 ; Story on Prom. Notes, §§ 20, 21 ; 1 Pars. on Notes and Bills, 37 ; Edwards on Bills and Prom. Notes, 140 ; Byles on Bills, 90 ; Smith's Mer. Law, 253.) On the sale to plaintiff's assignor, defendants impliedly warranted the genuineness of the bonds and the soundness of their own title. (Edwards on Bills and Notes, 184 ; 2 Pars. on Notes and Bills, 37, 41 ; *Murray* v. *Judah,* 6 Cow., 484 ; *Herrick* v. *Whiting,* 15 J. R., 240 ; *Heermance* v. *Vernoy,* 6 id., 5 ; *Shaver* v. *Ehle,* 16 id., 201 ; *Defreeze* v. *Trumper,* 1 id., 274 ; *Markle* v. *Hatfield,* 2 id., 455 ; *Morrison* v. *Currie,* 4 Duer, 79 ; *Del. Bk.* v. *Jarvis,*

20 N. Y., 226; *Burt* v. *Dewey*, 40 id., 283; *Scranton* v. *Clark*, 39 id., 225; *Thomas* v. *Barton*, 48 id., 197; *Burrill* v. *Smith*, 7 Pick., 291; *Lyons* v. *Miller*, 6 Grat., 439; *Ellis* v. *Wild*, 6 Mass., 321; *Jones* v. *Ryde*, 5 Taunt., 488; *Eagle Bk.* v. *Smith*, 5 Conn., 71; *Morford* v. *Davis*, 28 N. Y., 481, 485.) Defendants had neither acquired nor could they give title to the past due coupons. (*Husted* v. *Craig*, 36 N. Y., 221; *Shields* v. *Pettie*, 4 id., 122; *Smith* v. *Brady*, 17 id., 173; *Pike* v. *Butler*, 4 id., 360.) No evidence that the bonds had been adjudged invalid or of a demand of payment from the company was necessary. (*Ketchum* v. *Bk. of Commerce*, 19 N. Y., 503; *Markle* v. *Hatfield*, 2 J. R., 455; *Capal Bk.* v. *Bk. of Albany*, 1 Hill, 287; *Barr* v. *Veeder*, 3 Wend., 412; *Murray* v. *Judah*, 6 Cow., 484; Story on Sales, § 367 *b* ; *Sweetman* v. *Prince*, 26 N. Y., 224; *Bordwell* v. *Collie*, 45 id., 494; *Turnbull* v. *Bowyer*, 40 id., 56; *Burt* v. *Dewey*, id., 286.) Plaintiff is entitled to recover the price paid for the property, and interest. (*Burt* v. *Dewey*, 31 Barb., 540; *Armstrong* v. *Percy*, 5 Wend., 535; *Crittenden* v. *Posey*, 1 Head [Tenn.], 311; *Payne* v. *Rodden*, 4 Bibb [Ken.], 304; *Scott* v. *Scott*, 2 A. K. Marsh, 217; *Chancellor* v. *Wiggins*, 4 B. Mon., 201.)

FOLGER, J. The plaintiff puts his right of action upon the ground, that the defendants sold to his assignor these instruments, being personal property, without having any title thereto, and that hence they are liable upon their implied warranty of title. It is not to be disputed that, if these papers are other than negotiable instruments, there was in the sale of them by the defendants an implied warranty of their title to them, and that on a failure of title they are liable. The defendants insist, however, that they only impliedly warrant the genuineness of the execution of the instrument. In this they err. (*Murray* v. *Judah*, 6 Cow., 484.) The seller warrants the genuineness of the instrument, and that it is what it purports to be. (*Gurney* v.

*Womersley*, 28 Eng. L. & Eq., 256; see *Thrall* v. *Newell*, 19 Vt., 202.)

It is established by the proofs and verdict, that the instruments were stolen from the railroad corporation, whose obligations they purport to be. It follows that the defendants could acquire no title to them, unless they bring them and bring themselves, within the rules which protect the *bona fide* holder for value of commercial paper. The bonds of a railroad corporation, if they possess the requisites for negotiable paper, fall into that class of instruments, and are to be dealt with and disposed of by an application of the same legal principles. But a negotiable instrument must be a complete and perfect instrument when it is issued, or there must be authority reposed in some one, afterward to supply anything needed to make it perfect. (*The Norwich Bank* v. *Hyde*, 13 Conn., 279; *Exon* v. *Russell*, 4 M. & S., 505; *Woodworth* v. *Bank of America*, 19 J. R., 391.) It is evident upon the face of these papers that they were meant to have a specific place of payment, and that the kind of national money in which they were to be paid and the amount thereof were also to be specific, and that all of this was yet to be specified when they came into and out of the hands of the defendants. Now an exact place of payment, when a place of payment is meant to be fixed, and an exact amount to be paid, are essential parts of a negotiable instrument. (See cases last cited, *supra*.) In *Welch* v. *Sage* (47 N. Y., 143), cited by the defendants, the bonds were perfect and negotiable without the certificate which had been detached. (See page 148.) These instruments were not perfect when they passed from the possession of the defendants to that of the plaintiff's assignor. It was not then determined where they were to be paid nor in what national money they were to be paid, neither the principal nor the interest. This was uncertain, until by lawful authority, a space left for the purpose, was filled with the name of the place of payment. The corporation had given power to their president to fill this blank, which power he had not exercised in fact.

This was apparent to the defendants and to all others dealing with them. It was plain that the instruments were still imperfect and incomplete, and that they were so when they left the possession of the railroad corporation. It is incumbent then upon the defendants, to show that there is rightful authority elsewhere than in the corporation or its president to fill the blanks and make these bonds perfect instruments. The defendants contend that they or any holder of these instruments, seeing the indorsement of the president in blank, would undoubtedly and justly regard themselves as authorized to fill the blank. Cases are cited to sustain this proposition. In all of them, however, there is an authority from the party to be bound, to him to whom the paper was intrusted, for the filling of the blank, or an actual intrusting of it to him upon some confidence as to its use or disposition. This authority is either express, or it is implied from an actual delivery for future use, of the instrument, though still in its imperfect condition. As to an express authority there can be no question or doubt. The implied authority is found in the fact of delivery for use. For as it is not to be presumed that the delivery for use was meant to be a nugatory and unavailing act, and as it is apparent that it would be, if the instrument may not be perfected before put to use, the law implies an intention and hence an authority, that he to whom it is thus delivered, may supply all needs for making it a perfect and binding negotiable instrument. But this authority is not implied from the fact alone, that the paper is in hands other than those of him who is to be bound, but from that fact joined with this other fact, that it has been by him intrusted to those hands for the purpose and with the intent that it shall go into use and circulation. And an express authority, though it be limited, if it be exceeded by the one in whom confidence has been reposed, renders the party to the instrument liable to a *bona fide* holder for value, on the principle that of two, one of whom must suffer by the wrongful act of a third, it should be he who has enabled the wrongful act to be done. But there cannot be an enabling

of the wrongful act, unless there be assisting action of the party to the instrument who is sought to be bound, and there must be that in his conduct, in relation to the paper, which shows a parting with the possession of it for use, or with a confidence in him to whom it is delivered.

The liability of the maker of the instrument is put upon his act in sending it into the world in its imperfect form (*Cruchley* v. *Clarance*, 2 M. & S., 90), or upon an authority given or confidence reposed in the one put in possession of the instrument, that he should do that with it which should set it afloat on the currents of business. (*Van Duzer* v. *Howe*, 21 N. Y., 531.) In the last case cited, DENIO, J., says, that the principle which lies at the foundation, is that the maker, who *by putting his paper in circulation* has invited the public to receive it of any one having it in possession with apparent title, is estopped to urge the actual defect of title against a *bona fide* holder. So far has this gone, that it has been held that this authority is revoked by the death of the party sought to be bound, so that one taking paper indorsed by him, and intrusted by him to another for use while yet in an imperfect state, may not recover on it against the estate of the deceased indorser. (*Mich. Ins. Co.* v. *Leavenworth*, 30 Vt., 11.) And this court has held that when a negotiable instrument is in hands to which, *prima facie*, it has not come in the regular course of business, it is taken by a third party at his peril. (*Central Bank* v. *Hammett*, 50 N. Y., 158.) No authority has been cited, which decides that the maker of an instrument, negotiable but for some lack susceptible of being supplied, so that it is yet imperfect, who has not by his own act, or by the act of another authorized or confided in by him, put it in circulation, confers a power upon even a *bona fide* holder to supply that lack. He must have been himself instrumental in its leaving his possession and control and passing into that of another, and have been so with the purpose of its becoming effectual for circulation, or with some trust in the person to whom committed, before he can be held liable. He must in some way and for some purpose

have created an agency in some one to act with or to hold the paper; and to find an authority in a subsequent holder to make perfect the imperfect paper, this agency must first be established. The remarks of BYLES, J., in 2 Hurlst. & Colt., 184, cited and relied upon by the defendants, are qualified by him in *Foster* v. *MacKinnon* (4 L. R. Com. Pl., 709), where he says, that if they be right, it can only be with reference to a complete instrument. There was no such instrumentality on the part of this railroad corporation. On the contrary, it appears that it had no part in the bonds going out of its possession, but was despoiled of them by superior force.

The defendants claim that there was a failure of the proof to sustain the allegations of the complaint, and that their motion to dismiss the complaint should have been granted. The complaint, they say, substantially averred a cause of action arising from false representations, which is an action *ex delicto;* and that proof of a breach of an implied warranty of title, being matter of contract, will not sustain a complaint for the cause averred. It is true that the complaint avers that the defendants represented these instruments to be the bonds of the railroad corporation, issued by and binding upon it, and that the plaintiff's assignor relied upon these representations. But the summons is not for relief. It is for money. The complaint avers the facts which were proven and which make out a cause of action in contract. The presence of the averment as to the representations, even were they averred to have been false and fraudulent, do not make the action one. *ex delicto.* (See *Conaughty* v. *Nichols*, 42 N. Y., 83.)

The defendants also moved to dismiss the complaint, on the ground that no damages had been proven to have been sustained by the plaintiff. Whatever other answer might be made to this motion, it did appear that the mortgage, given by the railroad company as a security for the bonds of which these instruments were supposed to be a part, had been foreclosed, and the property covered by it sold and moneys realized thereon. If these instruments had been genuine, the

plaintiff or his assignor would have had a right to share in a division of this sum among the bondholders. It would doubtless have been a small dividend which would have been received; but however small, if appreciable, the plaintiff was entitled to it, and entitled to a verdict for that amount. So that a motion to dismiss, for the reason stated, was properly denied. And whatever the damages were, the plaintiff had a right to them, as assignee (see *Bordwell* v. *Collie,* 45 N. Y., 494), and though he should receive them not for himself, but for others, represented by him, who were the real parties in interest, he being a trustee of an express trust. To the rule of damages, as stated to the jury in the charge of the court, there was no exception taken.

The defendants offered to read in evidence, certain papers which it was claimed would show a submission of this controversy to arbitration, and an award in favor of the defendants. These were not competent to be admitted in bar of the plaintiff's action. The jury have found, upon the question being submitted to them, that the plaintiff's assignor bought the instruments for himself. As it was not claimed that he was a party to the submission, the papers were not competent evidence against him in direct bar of his action. They were not competent as admissions of a party in interest, until it was established that he by whom they were made was such; nor could they until then be received to assist in establishing the fact of his interest. The immediate issue was, what were the mutual rights of the plaintiff's assignor and of Zarega & Co. at the time of the purchase by the former of these instruments, neither of them being parties on the record in this action. The rule is, that this inquiry lets in such evidence as would have been receivable between those persons. (1 Phil. on Ev., 465, [490], chap. 8, § 10.) The declarations of Zarega would not have been competent in his favor against the plaintiff's assignor, and were not admissible.

But it is claimed that, if not competent in bar of the plaintiff's action, they were admissible on the collateral issue of the credibility of the witness Zarega. He had testified that his house did

not buy the bonds from the defendants, but did buy them of Scranton, the plaintiff's assignor. One defence set up in the answer was that the bonds were sold by the defendants to that house, and that afterward, on claim by it, there was a submission to arbitrators and award in the defendants' favor. It was material to this issue, the testimony he had given, and it was on a material point that the defendants now claim that they sought to contradict him. And the papers offered, if shown to have been signed by or with the knowledge of Zarega, or to have come to his knowledge, were pertinent for that purpose; but there was no proof of this.

The defendants' request to charge, it was not error for the court to refuse. There was testimony by Scranton from which the jury could find that he tendered a return to the defendants of the same instruments purchased of them.

The judgment should be affirmed, with costs to the respondent.

All concur.

Judgment affirmed.