LOWELL HOLBROOK, Respondent, *v.* NEW JERSEY ZINC COMPANY, Appellant.

A stock certificate, issued by a corporation having power so to issue, is a continuing affirmation of the ownership of the specified amount of stock by the person designated therein, or his assignee, until it is withdrawn in some manner recognized by law ; and a purchaser in good faith has a right to rely thereon and to claim the benefit of an estoppel in his favor as against the corporation.

A purchaser from one, other than the original stockholder, who receives a certificate of stock with the usual assignment and power of attorney thereon executed in blank by said stockholder, in an action against the corporation for refusal to transfer the stock on its books, is not bound to show affirmatively the title of his immediate transferrer. The presumption is that the stock was transferred and certificate delivered in the course of business, in the absence of evidence to the contrary.

Under the provisions of the act of 1833 relative to proceedings in suits, etc. (§ 9, chap. 271, Laws 1833), authorizing the acknowledgment and proof of written instruments, except bills, notes and wills, in the same manner as conveyances of real estate, an assignment of and power of attorney to transfer stock, duly acknowledged by a subscribing witness,

is competent evidence of the transfer, and the acknowledgment may be made at any time before the paper is offered in evidence.

The date to the cancellation of a revenue stamp attached to a power of attorney, itself without date, is presumptive evidence that the instrument was executed of that date.

The pendency of an action in another State to determine the title to corporate stock is not constructive notice to a purchaser in this State of a defect in the title of his assignor, and does not affect the title acquired by him.

A corporation whose certificate of stock is outstanding, cannot defeat the title of a purchaser in good faith, without actual notice, by proof of the pendency of an action in a competent court of this State, to determine the title of the original holder to the stock. Its own positive statements in the certificate cannot be overcome by such a constructive theoretical notice.

The doctrine of *lis pendens* is not applicable to corporate stock; it is a harsh doctrine, and will not be extended to commercial transactions.

It is only applicable, in any event, while the action is pending; as soon as final judgment is perfected, it ceases to have operation.

*Jeffres* v. *Cochrane* (48 N. Y., 671) distinguished.    The authorities on the subject of *lis pendens* collated.

(Argued May 12, 1874; decided September term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, in favor of the plaintiff, entered upon an order denying motion for a new trial and directing judgment upon verdict.

This action was brought to recover damages for a refusal of the defendant to transfer, on its books, fifty shares of its stock, of which the plaintiff held the certificates.

The facts disclosed were, that one William T. Riggs, on the 16th day of June, 1859, held two certificates of the stock of the defendant, a foreign corporation, of twenty-five shares each. These were a part of a larger amount of stock standing in his name on the same day, viz., 546 shares. Some of these shares had been transferred to him from the name of Riggs, Hitchcock & Co., of which firm he, as well as his father, Samuel Riggs, was a member. Samuel Riggs died in the year 1852. By his will, he appointed William T. Riggs and others his executors; William alone acted. In the will of Samuel Riggs there was the following clause: Item 9. "The rest and

residue of my estate, etc., I give to my children, his or her representatives, etc.; the portions of my daughters or their representatives to be invested in such securities as are specified in item number 2, and to be held by my executors, the survivor of them and his heirs, in trust for the sole and separate use of my said daughters, respectively, their executors and administrators." The daughters also had power to dispose of their respective shares by last will and testament. The mode of investment was provided for in "item number 2" of the will. The testator left two daughters : Margaretta (who subsequently married Jacob H. Pleasants) and Anna. William T. Riggs continued to manage the trust estate until 1863. In that year, Pleasants and his wife and Miss Anna Riggs filed a bill against him and the defendant in the Circuit Court of Baltimore, Maryland, alleging that he had misapplied trust funds, including 440 shares of the stock, and praying for an accounting, appointment of a new trustee, and an injunction. A temporary injunction was granted accordingly. While that suit was pending, Riggs removed from Baltimore to New York. A decree was made 10th May, 1865, whereby he was required to transfer to Pleasants, as a substituted trustee, all the stock of the Zinc Company then standing in his name, viz., 125 shares. In May, 1865, the same plaintiffs brought an action in this State in the Supreme Court of the first judicial district against W. T. Riggs, the present defendant, and others. Its object was to compel Riggs to transfer to Pleasants, as trustee, the shares above referred to, and to enjoin him from transferring them, or from prosecuting any suit in respect to them. The defendant did not appear in that action, though Riggs did. The judgment at Special Term was for damages only, and was rendered July 9th, 1866. On an appeal by the plaintiffs, a judgment was entered, by consent, at General Term, November 25th, 1866, reversing that of the Special Term. This judgment declared, that the shares of the defendant's stock standing in the name of W. T. Riggs belonged to the trust estate, and directed the defendant to issue new certifi-

cates to Pleasants, as trustee, and that the certificates outstanding in the name of Riggs should be surrendered for cancellation. The defendant signed this consent, acting under the advice and suggestion of the attorney of the plaintiff. The defendant issued new certificates of stock to Pleasants, and canceled the entries of stock standing in the name of Riggs, without any surrender of the outstanding certificates.

The plaintiff in the present action claims under the outstanding certificates. He maintained, at the trial, that while the Baltimore action was pending, Riggs executed blank powers of attorney annexed to the certificates, which came into the possession of one Goodall, and that he took them for value as collateral security on 29th October, 1867, from Goodall, for a loan of $2,000, and that he was a purchaser without notice. After the maturity of this loan, the shares so hypothecated were advertised for sale. The defendant's president attended the sale, and announced that there was no stock on the company's books such as that represented by the certificates. The shares could not be sold, and were bid in by the plaintiff at a nominal sum. A demand made for a transfer on the company's books was refused; whereupon the present action was brought. The answer set up the proceedings before the court already detailed, and averred that the plaintiff was not a purchaser in good faith.

At the close of the evidence, a motion to dismiss the complaint was made and denied, and the defendant duly excepted. The court directed a verdict for the plaintiff, the exceptions to be heard in the first instance at General Term.

*E. N. Taft* for the appellant. The verdict can only be sustained by showing that the facts proved by plaintiff, without inference or intendment, make out a case superior in law to that shown by defendant's proofs. (*McElderry* v. *Flanagan*, 1 H. & G., 321; *People* v. *Bd. of Police*, 35 Barb., 651; 14 Abb., 158; *Stuart* v. *Simpson*, 1 Wend., 376; *McBride* v. *Farmers' Bk.*, 26 N. Y., 450.) The certificates of stock were not negotiable instruments so as to come within

the rule governing bills of exchange and promissory notes. (*N. Y. and N. H. R. R. Co.* v. *Schuyler,* 34 N. Y., 72; *Stebbins* v. *Phenix Ins. Co.,* 3 Paige, 350; *Wilson* v. *Little,* 2 N. Y., 447; *Mechanics' Bk.* v. *N. Y. and N. H. R. R. Co.,* 13 id., 625; *Dows* v. *Perrin,* 16 id., 325; *Rumsey* v. *McCready,* 6 Duer, 574; *Weaver* v. *Barden,* 49 N. Y., 288; *Dustin* v. *Livingston,* 9 J. R., 96; *Howe* v. *Starkweather,* 17 Mass., 244; *McNeil* v. *Tenth Nat. Bk.,* 46 N. Y., 325; *Arnold* v. *Ruggles,* 1 R. I., 165.) An unauthorized sale, although for a valuable consideration and without notice, vests no higher title in the vendee than was possessed by the vendor. (*Prescott* v. *De Forest,* 16 J. R., 159; *Wheelwright* v. *Depuyster,* 1 id., 471; *Williams* v. *Merle,* 11 Wend., 80; *Brower* v. *Peabody,* 3 Kern., 121; *Covill* v. *Hill,* 4 Den., 323.) The pendency of the suit in the Supreme Court against Riggs was notice to plaintiff of his want of authority to sell the certificates. (Story's Eq. Jur., §§ 405, 406; Willard's Eq. Jur., 251, 252; *Leitch* v. *Wells,* 48 N. Y., 585.) The burden of proof was upon plaintiff to show that Goodall was a *bona fide* purchaser without notice. (*Devoe* v. *Brandt,* 53 N. Y., 462; *Debell* v. *Foxworth's Heirs,* 9 B. Mon., 230.) The court erred in admitting, as proved and as evidence, the printed blanks called assignments and powers of attorney. (4 R. S., 620 [Edm. ed.].) Defendant would not be liable in this action for refusing to permit the stock to be duplicated by a transfer to plaintiff, even if Goodall had a right to it. (*N. Y. and N. H. R. R. Co.* v. *Schuyler,* 34 N. Y., 80; *Mechanics' Bk.* v. *N. Y. and N. H. R. R. Co.,* 13 id., 599; *Com. Bk. of Buffalo* v. *Kortright,* 22 Wend., 353; *Stebbins* v. *Phenix F. Ins. Co.,* 3 Paige, 350.)

*Edward Patterson* for the respondent. The action was correctly brought for damages. (*Pollock* v. *Nat. Bk.,* 3 Seld., 276; *Kortright* v. *Buff. Com. Bk.,* 22 Wend., 369; *N. Y. and N. H. R. R. Co.* v. *Schuyler,* 34 N. Y., 30.) Defendant was estopped from denying the representations and recitals contained in its certificates. (*N. Y. and N. H.*

*R. R. Co.* v. *Schuyler*, 34 N. Y., 30 ; *Davis* v. *Bk. of England*, 2 Bing., 393 ; *Townsend* v. *Underhill*, 52 N. Y., 211 ; *Reg.* v. *Shrop. U. Co.*, L. R. [8 Q. B.], 420 ; *Driscoll* v. *W. and B. Co.*, N. Y. Superior Ct., G. T., Nov., 1873 ; *Leitch* v. *Wells*, 48 N. Y., 586 ; *In re Bahia*, L. R. [3 Q. B.], 584 ; *Leavitt* v. *Fisher*, 4 Duer, 20 ; *Fatman* v. *Lobach*, 1 id., 354.)    Plaintiff is equal in equity with the so-called *cestui que trust* of Riggs, and the rule is absolute that where equities are equal the legal title must prevail. (Lewin on Trusts, 19 ; Hill on Trustees, 300 ; *Weaver* v. *Barden*, 49 N. Y., 300 ; *McNeil* v. *Tenth Nat. Bk.*, 46 id., 325.)    Defendant cannot rely upon the alleged trust in favor of Samuel Riggs' daughters to defeat plaintiff's action.    (*Weaver* v. *Barden*, 49 N. Y., 288 ; *Dustin* v. *Livingston*, 9 J. R., 96 ; *Howe* v. *Starkweather*, 17 Mass., 244 ; *McNeil* v. *Tenth Nat. Bk.*, 46 N. Y., 325 ; *Arnold* v. *Ruggles*, 1 R. I., 165 ; *Moore* v. *Miller*, 6 Lans., 401 ; *Com. Bk.* v. *Kortright*, 22 Wend., 348 ; *White* v. *Springfield Bk.*, 3 Sandf., 229.)    The suit in Baltimore against Riggs and the defendant was not notice to plaintiff of a trust attaching to the shares. (*Shelton* v. *Johnson*, 4 Sneed, 672 ; *Leitch* v. *Wells*, 48 N. Y., 586 ; *Price* v. *White*, 1 Bailey Eq., 234 ; *Blake* v. *Hayward*, id., 208 ; *Wesley* v. *Earl of Scar.*, 3 Atk., 361 ; *Turner* v. *Crebill*, 1 Ohio, 174 ; Hill on Trustees, 794 [4th ed.].)    The suit being collusive could not be notice to a purchaser so as to bind his interest by decree.    (Willard's Eq. Jur., ch. 3, p. 251 ; *Parker* v. *Sumner*, 23 Vt., 538 ; *Hoffman* v. *Coster*, 2 Whart., 453 ; *Downs* v. *Fuller*, 2 Metc., 135 ; *Gratz* v. *Lancaster Bk.*, 17 S. & R., 278 ; *Yerk's appeal*, 8 W. & S., 225 ; *In re Bahia*, L. R. [3 Q. B.], 585 ; *Leitch* v. *Wells*, 48 N. Y., 586.)

DWIGHT, C.    The principal inquiry in the present case is, whether the plaintiff is a holder of the stock of the New Jersey Zinc Company in good faith and for value.

It cannot now be denied, that if a corporation having power to issue stock certificates does in fact issue such a certificate, in which it affirms that a designated person is entitled to a

certain number of shares of stock, it thereby holds out to persons who may deal in good faith with the person named in the certificate, that he is an owner and has capacity to transfer the shares. This proposition does not rest on any view of the negotiability of stock but on general principles appertaining to the law of estoppel.

The rules of estoppel are of comparatively recent origin, and their applicability to this subject has only been lately perceived. They are now fully recognized in England and in this country as governing the present subject. In order to constitute a case of estoppel under principles now established, it is necessary to show that a representation has been made, with a view or expectation that it will be acted upon by another, that it has been so acted upon, and that a person relying upon the representation would sustain an injury or damage if it were withdrawn. All of these elements combine in the case at bar. When the defendant issued its certificates to William T. Riggs, it affirmed to all persons who might deal with him, that he owned a certain portion of its capital stock and had full power to transfer it. Any purchaser has a right to rely upon this statement, and to claim the benefit of an estoppel in its favor. The correctness of this view can be readily perceived, by supposing that an inquiry had been made at the office of the company as to the ownership of Riggs, and an answer had been given containing the same expressions as are found in the certificate — could not a purchaser have acted with safety upon such a statement? The certificate itself must be regarded as a continuing affirmation of the ownership of Riggs and his power over the stock until it is withdrawn in some manner recognized by law. These views are fully sustained by *N. Y. and N. H. R. R. Co.* v. *Schuyler* (34 N. Y., 30, 49, 53); *Leitch* v. *Wells* (48 id., 585); *McNeil* v. *Tenth Nat. Bank* (46 id., 325).

It will be observed that the present action is against the corporation itself issuing the certificate and making the representations on which the plaintiff claims to have relied. The whole controversy in the present case becomes narrowed down

to this: Did the plaintiff take the stock in such a way as to bring himself within the rules applicable to estoppel, or has the representation made by the certificate been, as to him, legally withdrawn?

It is urged by the defendant that there was no evidence in the present case that Riggs ever *delivered* the shares to Goodall, from whom the plaintiff derived title, and that delivery must be proved by the plaintiff affirmatively. He cites, in support of this proposition, *Ledwich* v. *McKim* (53 N. Y., 307) and other cases. *Ledwich* v. *McKim* does not raise the question. In that case it appeared affirmatively that certain bonds, the title to which was in litigation, were stolen, and the instruments were in such an imperfect condition that they were not negotiable in the sense that a holder could transfer a legal title to them. It is well settled, on the other hand, that one who takes an assignment of a stock certificate, as between him and the transferrer, takes the whole title, both legal and equitable. (*McNeil* v. *Tenth Nat. Bank, supra; Leitch* v. *Wells, supra.*) The case of *Ledwich* v. *McKim* is plainly not an authority upon the question whether a purchaser for value of stock is bound to show affirmatively that the certificates were delivered by a former owner to his own grantor. Such a rule would extend to any number of intermediate transfers, and he would be obliged to fortify his chain of title by showing the completeness of every link. The presumption is, that the stock was transferred in the course of business, unless there is some evidence to the contrary. There is no force in the suggestion that the power of attorney in the present case was incomplete, because there were blanks for the number of shares and for the name of the attorney. Any holder might fill up the blanks and constitute himself the attorney. These points are too well settled to need discussion. (*N. Y. and N. H. R. R. Co.* v. *Schuyler, supra; McNeil* v. *Tenth Nat. Bank, supra,* 330, 331; *Kortright* v. *Com. Bk. of Buffalo,* 20 Wend., 91; S. C., 22 id., 348.)

If it be assumed that Riggs was a trustee, there was no notice of that fact on the face of the certificate, and the

purchaser àcting in good faith would, according to elementary rules, take the complete title to the stock. (Same cases, and *Weaver* v. *Barden*, 49 N. Y., 300.)

The counsel for the defendant, however, strongly insists that the·rule in the *Schuyler* case does not cover the present controversy, because in that case there was some evidence of delivery of the certificates, while in the present instance there is none. Delivery is, however, to be presumed from the fact that the certificates of stock, with the proper indorsements, were in the possession of the holder. In what other rational way can that possession be accounted for? It would be contrary to all reason to presume that the holder came by the certificates unfairly. It must be supposed that the ordinary course of business was followed. (1 Greenl. on Ev., § 38.) So, if a deed is found in the hands of a grantee, having on its face the evidence of its regular execution, it will be presumed to have been delivered by the grantor. (*Ward* v. *Lewis*, 4 Pick., 518.)

The defendant also claimed that it was irregular to prove the transfer of the stock by Riggs by means of an acknowledgment made by the subscribing witness before a notary, such acknowledgment being made long after the power·of ,attorney is assumed to have been executed by Riggs, and shortly before it was offered in evidence. There is nothing in this objection. The Laws of 1833, chapter 271, section 9, provide that, "every written instrument, except promissory notes, bills of exchange and the last wills of deceased persons, may be proved or acknowledged in the manner now provided by law for taking the proof or acknowledgment of conveyances of real estate. The certificate thus taken is to be used in evidence in the same manner and with the same effect as if the instrument were a conveyance of real estate." There can be no doubt that the power of attorney is a "written instrument," and falls within the statute, and the acknowledgment may be made at any time before the paper is offered in evidence. The only serious question in the case is, whether the pendency of the actions in Balti-

more, Maryland, and in New York, can be regarded as constructive notice to the plaintiff of the fact that Riggs held the stock in trust. This question divides itself into two branches : 1. Was the pendency of the action in Baltimore constructive notice to a person residing here ? 2. If not, was the pendency of the action in the Supreme Court of this State, notice ?

1. The first branch of this inquiry should be answered unhesitatingly in the negative. (*Shelton* v. *Johnson,* 4 Sneed, 672 ; 2 Leading Cases in Equity, 175 [3d Am. ed.], note to *Le Neve* v. *Le Neve ; McLaurine* v. *Monroe,* 30 Missouri, 462.)

The facts in *Shelton* v. *Johnson* were substantially these : While an action involving the title to certain slaves was pending in another State, they were brought into Tennessee and bought by an innocent purchaser for a valuable consideration, who held them adversely for a time sufficient to protect his title under the statute of limitations. It was held on this state of facts, that his title so acquired was not affected by the pendency of a suit in another State, and that the doctrine that *lis pendens* is notice to all the world has no extra-territorial application, and must be restricted to parties living within the jurisdiction where the action is pending. This view is plainly correct from the very nature of equitable jurisdiction, which binds only the person within the power of the court. It was further decided in this case, that the clause in the United States Constitution providing that "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State" (art. 4, § 1), does not interfere with this construction of the doctrine of *lis pendens.*

2. There is a preliminary question to be disposed of, whether the sale of the stock did not precede the commencement of the action in this State. If this could be established, it would be a complete answer to the theory of the defendant. If the stock was issued to a holder for value before the commencement of the action, and in the course of business, no subsequent action brought against Riggs would

affect the title. This proposition is so manifest that it does not need the support of authorities. It is not contested by the defendant.

To sustain such a transfer, the plaintiff urges that the cancellation of the revenue stamp on the power of attorney of the date of February 11, 1864, leads to the presumption that the power itself was executed as of that date, and in the course of business, for the purposes of transfer. This view seems to be in accordance with the usual presumptions prevailing in the law of evidence. As the ordinary course of business is to cancel a revenue stamp on the day that an instrument is executed, and, moreover, as the revenue law then requires it to be done, the date of cancellation is presumptively at the time of execution. (1 Greenleaf on Evidence, § 38.) It would be unreasonable to assume that the stamp has been affixed without the authority of Riggs, or for any other purpose than to make complete a transaction with which it is apparently connected. The reasonable view is, that the power of attorney was executed on the day represented by the marks of cancellation.

The case, however, may be considered on a still broader ground and in connection with the doctrines of *lis pendens.* A defence such as this is in its own nature harsh, and peculiarly so in a case like the present. It is in direct opposition to the assertions made by the defendant in its certificate of stock. Suppose that, on an inquiry made of one of its officers, the defendant had stated to the plaintiff or his predecessor in ownership that Riggs was owner, would it have been permitted to contend that the plaintiff had constructive notice to the contrary by the pendency of an action? This would be to destroy the effect of express words by implication. The certificate, however, is substantially equivalent to an express affirmation. So long as that is outstanding, the defendant continues to affirm the power of Riggs to make a transfer. It is a severe rule, that would permit, under such circumstances, the defendant to belie its own representations by showing that there was pending in a com-

petent court an action concerning the title of the holder of
the certificate, and that a constructive theoretical notice
should overcome the positive statements in the defendant's
certificate.   If the defendant, on the other hand, is precluded
from denying their purport, it sustains no hardship, since the
very decree of the court behind which it takes shelter, pro-
vides that Riggs should surrender the outstanding certificates,
in connection with the direction to issue new certificates to
Pleasants.   If the defendant did not see that this surrender
was made before the new certificates were issued, it has only
itself to blame.

The doctrine of *lis pendens,* so harsh in its effect, is not
applicable to the present case.   It may be considered under
two aspects: one that the stock was transferred by Riggs
after the decree of November 25, 1866, and the other before.
On the first hypothesis it is clear that the decree was not,
by the general rules of equity jurisprudence, notice.   The
theory of the rule under discussion is, that while a suit
is pending there is to be no change in the existing state
of things—*pendente lite, nihil innovetur.*   It is a rule of
public policy and applicable only while the action is pending.
As soon as a decree is rendered it ceases to have operation.
The true theory of the rule is expounded in *Bellamy* v.
*Sabine* (1 De Gex & Jones, 566).   This case, which was con-
sidered as involving a question of the highest importance,
was discussed before the lord chancellor and the lord justices
of appeal.   It was held that the true view of the doctrine of
*lis pendens* is not that it is notice, but that it is necessary to
the administration of justice that a decision of the court in a
suit should be binding not only on the litigating parties but
also on those who derive title from them, *pendente lite,*
whether with notice of the suit or not.   The object of the
rule is to bring litigation to an end, to prevent new suits, the
introduction of new parties and to lead the existing contro-
versy to a close.   (P. 578.)   So in *Newman* v. *Chapman* (2
Randolph, 93) it was held that the doctrine does not rest
upon the presumption of notice, but upon grounds of public

policy.   Accordingly, after judgment rendered, the peculiar
doctrines of this branch of the law cannot be invoked.   The
leading case directly deciding this point (which is involved in
*Bellamy* v. *Sabine, supra*) is *Worsley* v. *Earl of Scarborough* (3
Atk., 392).   Lord Chancellor HARDWICKE there said : " There
is no such rule in this court that a decree made here shall be
an implied notice to a purchaser after the cause is ended, but
it is the pendency of the suit that creates the notice, for, as it
is a transaction in a sovereign court of justice, it is supposed
all people are attentive to what passes there, and it is to pre-
vent a greater mischief that would arise by people's purchasing
a right under litigation and then in contest."   This course of
reasoning must be understood as applying to a final decree.
When it is not such a one as puts a conclusion to the matter
in question, that is still such a suit as does affect people with
notice of what is doing.   In *Rivers* v. *Steele* (cited by Mr.
Cox in manuscript notes to 1 Vernon, 286) it is stated that
Lord HARDWICKE held, most distinctly, that decrees are not
notice.   So in *Kinsman* v. *Kinsman* (1 Russ. & Mylne, 617),
Lord LYNDHURST said : It is not pretended that after decree and
before execution a *lis pendens* could any longer exist.   See,
also, *Gore* v. *Stacpoole* (1 Dow., 30).   These decisions are
followed in *Price* v. *White* (1 Bailey Eq., 244) ; *Blake* v.
*Heyward* (id., 208) ; *Turner* v. *Orebill* (1 Ohio, 372).

There is a *dictum* in *Monell* v. *Lawrence* (12 J. R., 534),
that all persons may be bound to take notice of decrees in
chancery.   This remark rests on a *dictum* in *Sorrell* v. *Car-
penter* (2 P. Wms., 483), which has been discarded by recent
decisions and text writers.   The whole matter is discussed in
2 Sugden on Vendors and Purchasers, 546 (7th Am. ed.)
The *dictum* in *Monell* v. *Lawrence* is directly opposed to the
theory of the subject so satisfactorily expounded in *Bellamy*
v. *Sabine* (*supra*).

The other hypothesis may now be considered.   Assume
that Riggs parted with the stock while the New York action
against him was pending, and that the result of it would
have been binding on him if real estate had been in contro-

versy. It may then be affirmed that the whole subject is inapplicable to such property as is now in litigation. The origin of this branch of the law it is now difficult to determine. It was in full recognition in the time of Lord BACON, as shown by the twelfth of his Ordinances for the Administration of Justice in the Court of Chancery. The rule is there expressed in this form : " No decree bindeth any that cometh in *bona fide* by *conveyance* from the defendant before the bill exhibited, and is made no party neither by bill nor order, but where he comes in *pendente lite* and while the suit is in full prosecution, and without any color of allowance or privity of the court, there regularly the decree bindeth." The language here used would seem to indicate that this was an established doctrine to which Lord BACON simply gave expression. The word " conveyance " would seem to show that it was a rule applied only to real estate. It has been supposed by some to have been derived from the practice in real actions at common law, closely resembling Lord BACON's proposition.

An examination of the English reports will show that the law of *lis pendens* has only been used in England in cases involving the title to real estate or interests therein. It is said by an accurate writer, Mr. Powell, in his work on Mortgages, that " there is no case in which equity has held the property of goods to be affected by reason of a *lis pendens*, where possession is the principal evidence of ownership, as of personal chattels." (2 Powell on Mort. [Notes by Rand, ed. 1828], 618.) Lord ELDON doubted the application of the doctrine to personal property, in *Jervis* v. *White* (7 Ves., 413); and twenty years later, in *Hood* v. *Aston* (1 Russell, 412). There are, however, cases in the courts of this country, where the doctrines of *lis pendens* have been applied to personal property, and some even to personal chattels. Some of these cases are cited. (*Murray* v. *Lylburn*, 2 J. Ch., 441 ; *Scudder* v. *Van Amburgh*, 4 Edw. Ch., 29 ; *Bolling* v. *Carter*, 9 Ala. [N. S.], 921 ; *Thoms* v. *Southard*, 2 Dana,

480; *Watlington* v. *Howley*, 1 Desaus., 167; *Diamond* v. *Lawrence Co.*, 37 Penn. St., 353.)

In *Murray* v. *Lylburn* Chancellor KENT applied the doctrine to the case of a contested title to a mortgage; he carefully distinguishes, in his opinion, between mortgages and other securities in trust and other personalty. He says: "If he (the defaulting trustee) possessed cash, as the proceeds of the trust estate, or negotiable paper not due, or perhaps movable property, such as horses, cattle and grain, I am not prepared to say the rule is to be carried so far as to affect such sales. The safety of commercial dealing would require a limitation of the rule. But bonds and mortgages are not the subject of ordinary commerce; the party was dealing with a subject out of the ordinary course of traffic, and always understood to be subject to equities, and there can be very little ground for complaint of hardship, in the application of the general doctrine to it."

In *Scudder* v. *Van Amburgh* the vice-chancellor expresses himself as "inclined to the view" that the doctrine extends to the property then in litigation — furniture; there is however no discussion of the subject. The case of *Bolling* v. *Carter* concerned the title to slaves. It was disposed of without discussion. The result is disapproved in a later case in the same court (*Winston* v. *Westfeldt*), to be hereafter considered. In *Thoms* v. *Southard* there was a foreclosure of a mortgage on a steamboat. It was held that the pendency of the action created an equitable lien in favor of the mortgagee, which could not be divested by a subsequent levy of an execution in favor of a creditor. *Watlington* v. *Howley* was rested on the untenable ground already considered, that a decree is notice to all persons. It involved the title to certificates of public debt. In *Diamond* v. *Lawrence County*, it was held that this doctrine extended to a litigation concerning the title to county bonds. This was expressly placed on the ground that, by the law of Pennsylvania, county bonds are *choses in action* and not commercial paper. Being choses in action, the rule of Chancellor KENT, in *Murray* v. *Lylburn*, was

followed, and the pendency of the suit was declared to be notice to all mankind.

There are other authorities, on the other hand, casting doubt upon the whole subject, and particularly denying or doubting that the doctrine of *lis pendens* can be extended to commercial paper not due. ( *Winston* v. *Westfeldt*, 22 Ala. [N. S.], 770 ; *Stone* v. *Elliott*, 11 Ohio St., 252 ; *Howe* v. *Hartness*, id., 449 ; *Lindsley* v. *Diefendorf*, 43 How. Pr., 357 ; *McLaurine* v. *Monroe*, 30 Mo. [9 Jones], 462.) *Winston* v. *Westfeldt* is an early and leading case in reference to this distinction, and expressly decides that the rules of *lis pendens* cannot be extended to negotiable paper not due. The views of GOLDTHWAITE, J., who pronounced the opinion of the court, are very satisfactory ; he said : " Negotiable paper, representing as it does in almost all civilized nations a very large proportion of their commercial operations, and serving to a great extent as the representative of money, is justly a favorite of the law, and enjoys immunities and privileges which are extended to no other contract. The tendency of courts has been to uphold this description of paper in the hands of *bona fide* holders, against every species of defence which might exist as between the original parties. The credit and confidence due to it must be impaired if the buyer were required to examine the courts of every county in the State before he could be sure of his purchase, and such would necessarily be the case if the doctrine of *lis pendens* applied to it. There are no adjudications to force us to this extremity. The strongest considerations of public policy seem to forbid the extension of the rule to money or bank bills, and we think that commercial paper, as the representative of money, stands on the same footing." The case of *Jeffres* v. *Cochrane* (48 N. Y., 671) is not opposed to these views. The note that was transferred in that case *pendente lite* was sold to an attorney, with *actual* notice of the pendency of an action concerning its ownership. He was properly held bound by the judgment.

The question is now presented, whether, in the case of

stocks, we shall follow the rule in *Murray* v. *Lylburn*, or, whether we shall adopt Chancellor Kent's own distinction, and declare the rule as inapplicable to this case. All the considerations so forcibly stated in *Winston* v. *Westfeldt* apply with nearly equal strength in the case of stocks. The purchaser of these, as has already been shown, does not merely obtain an equitable title, as in the case of a bond and mortgage, but the complete legal ownership. They are dealt with in the same way as commercial paper. It would be in the highest degree inconvenient to force the purchaser to examine a clerk's office in every county of the State before he could safely purchase. Commerce requires a free and unrestricted sale of such property, unburdened with the shackles imposed by a *lis pendens*. That, as has been seen, has its whole foundation in public policy. It may be met and modified by a countervailing public policy. The expressions of Earl, C.; in *Leitch* v. *Wells* (48 N. Y., 585) are approved and sanctioned; and we hold that the doctrine of *lis pendens*, so far as it maintains that the mere pending of an action concerning the title to stocks, is constructive notice to all mankind, and that a purchaser acting in good faith is bound by the results of the action, is no part of the law of this State. The doctrine of *lis pendens* has long been deemed hard and dry law. (*Sorrell* v. *Carpenter*, 2 P. Wms., 482.) It is there said: "A purchaser *pendente lite*, though without actual notice and for a valuable consideration, shall be set aside, and though in this case the rule in equity be hard, yet it is in imitation of the common law, where in a real action if the defendant aliens pending the writ, the judgment will overreach the alienation." The rule is, undoubtedly, a wise one in its imitation of the common law as to real estate. In commercial transactions, no benefit can be derived from it, and only its hardship is apparent.

The judgment of the court below must be affirmed.

All concur.

Judgment affirmed.