the company has been prejudiced by this delay, but, as Judge Story has, said:

"The general principle is that laches is not imputable to the government; and this maxim is founded, not in the notion of extraordinary prerogative, but, upon, a great public policy." United States v. Kirkpatrick, 9 Wheat. 720, 735, 6 L. Ed. 199.

As a state can only act through officers and agents, if their neglect could be imputed to the state statutes might in effect be repealed and great and serious loss be entailed on the state, and the will of the people thwarted by a negligent or corrupt official. I am of opinion that the facts in this proceeding establish the right to the issuance of a peremptory writ of mandamus in accordance with the prayer of the petition.

Application granted, with costs. Settle order and writ on notice.

---

SWITZERLAND GENERAL INS. CO. OF ZURICH v. NEW YORK CENT. & H. R. R. CO. et al.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

1. PLEADING (§ 406*)—DEFECTS—WAIVER OF OBJECTIONS.

Where defendant's counsel at the opening or the trial disclaimed any desire to take advantage of technical defects in the complaint, and the cause of action was established without objection during the course of the trial, defects in the complaint will be regarded as waived.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1355–1359, 1361–1365, 1367–1374; Dec. Dig. § 406.*]

2. LOST INSTRUMENTS (§ 12*)—COMPELLING RE-EXECUTION.

A railroad company issued coupon bonds to the amount of $100,000,000 payable about 100 years after date, secured by a mortgage providing that the amount of bonds should not exceed the sum stated, and that no additional bonds should be issued except to replace bonds mutilated or destroyed. It also provided for registration and authorized payment to the bearer, if not registered, irrespective of any question of notice. The owner of two of the unregistered bonds placed them in the mails, where they were lost, but there was no evidence that they were either mutilated or destroyed. In an action to compel the execution of bonds in their place, the court granted such relief on condition that a surety company bond should be executed to indemnify the railroad company against claims on the lost bonds by bona fide holders. *Held*, that this did not properly protect the railroad company, since, in view of the aggregate amount of the bond issue and the length of the term, they might pay the lost bonds in the regular course of business to a person not a bona fide holder, and, in addition, it required the railroad company to violate the terms of the mortgage, and that the judgment should be modified by requiring the issuance of a certificate of indebtedness for the same amount, and on the same terms as the lost bonds, with a proviso that it should become unenforceable and void if the lost bonds should be found, on condition that a bond be executed to indemnify the railroad company against all liability on the lost bonds and coupons to reimburse it for any payments made thereon in due course for expenses incurred in resisting demands for payment, or in seeking to recover payments.

[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. §§ 21–26; Dec. Dig. § 12.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by the Switzerland General Insurance Company of Zurich against the New York Central & Hudson River Railroad Company and another. From a judgment for plaintiff, the defendant named appeals. Affirmed in part and modified in part.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Thomas Emery, of New York City, for appellant.

Martin Conboy, of New York City, for respondent.

McLAUGHLIN, J. There is no dispute between the parties as to the material facts involved. On January 16, 1907, the firm of A. Iselin & Co. of New York were the owners of two $1,000 3½ per cent. gold mortgage bonds of the defendant railroad company, with the unmatured interest coupons attached. The bonds were part of an authorized issue of $100,000,000, payable July 1, 1997, secured by a mortgage dated June 1, 1897, of which about $89,000,000 were then outstanding. The mortgage contained a provision for the registry of bonds secured thereby and on the 1st of July, 1911, of the bonds outstanding, 43,758 were registered and 45,242 were coupon bonds The two bonds in question were not registered, and were, together with the coupons attached, payable to bearer. On the 16th of January, 1907, A. Iselin & Co. placed these two bonds in a package with certain other bonds and mailed them in the post office in the city of New York, addressed to a firm in Paris; the package being registered. They were never received by the Paris firm, nor have they been heard from since they were mailed. Prior to mailing the plaintiff insured their safe transmission for their market value, and upon proof of their loss the insurance company, this plaintiff, paid the amount of the insurance and took from Iselin & Co. an assignment of all their right, title, and interest thereto. The bonds and coupons were numbered, and it is conceded that the coupons, amounting to $315, maturing since the mailing of the package, have not been paid. This action was brought to compel the railroad company to deliver to the plaintiff two bonds similar in all respects to the two which were lost, and to recover the past-due interest thereon. The trial court directed judgment in favor of the plaintiff for the relief asked upon condition that it give a surety company bond in the penal sum of $8,000, for the purpose of indemnifying the defendant against all claims of any other person in the regular course of business for value and without notice on account of the lost bonds and coupons, and against all costs and expenses by reason of such claims. Judgment was entered to this effect, and the defendant railroad company appeals.

[1] A question is raised as to the sufficiency of the complaint, but it does not seem necessary to consider the same on this appeal. The appellant's counsel, at the opening of the trial, disclaimed any desire to take advantage of technical defects in the complaint, and the plaintiff's cause of action was established without objection during the course of the trial. That being so, the defect in the complaint, if any, must be deemed to have been waived, and there was nothing to prevent the

trial court from giving judgment upon the merits as the appellant, by motion and its request to find, asked it to do.

[2] It is not disputed that upon the uncontradicted facts the plaintiff is entitled to some relief, and the only question raised by the appeal is its extent. The mortgage in terms provided for the issuance of new bonds only to replace bonds which had been mutilated or destroyed, and that defendant might treat the bearer of any coupon bond not registered, or of any coupon, as the absolute owner thereof for the purpose of receiving payment, notice to the contrary notwithstanding. It is urged that in view of these provisions in the mortgage, taken in connection with the length of time the bonds have to run, and the difficulty in identifying the coupons by their numbers alone, there being upwards of 45,000 coupon bonds now outstanding, that the appellant is not sufficiently protected by the judgment. The case, as presented, is one peculiarly within the province of a court of equity, and the sole question to be determined is what would be just and fair to both parties. For this reason it is not necessary, nor would it be profitable, to review the authorities to which our attention is called, since the decisions in those cases were rendered upon a different state of facts.

I am of the opinion that the judgment is more favorable to the plaintiff than it should be, does not give to the appellant the protection to which, under the facts, it is entitled, and in one respect compels the defendant to violate a provision of its mortgage. It is true the bonds were lost without fault of either party, but the plaintiff's assignor, had it so desired, could have had them registered, and thus precluded the possibility of their being enforceable in the hands of an innocent third party. The possibility of their now being enforced by an innocent third party who has purchased them for value is by no means a remote one, since there is no evidence whatever that they have been mutilated or destroyed, aside from the fact that they have not been heard from since they were mailed and cannot now be located. If this possibility should be realized, the appellant might be held liable upon both the lost bonds and those given to replace them (Manhattan Sav. Inst. v. N. Y. Nat. Ex. Bk., 170 N. Y. 58, 62 N. E. 1079, 88 Am. St. Rep. 640), and its only recourse in that event would be the indemnity bond, which, if in the form directed by the judgment, would protect it only as to payments made to holders for value, without notice, notwithstanding the express provision in the mortgage that it could treat any holder as the owner. When it is borne in mind that the appellant will be subject to this possible liability for upwards of 100 years, it ought not to be compelled to give duplicate bonds, and the indemnity bond directed to be given is not ample protection. The appellant was in no way responsible for the loss of the bonds, and while it does not, and ought not, to escape its just liability thereon, the relief granted to the plaintiff should be upon such terms and conditions that it will not be prejudiced thereby or put in any more unfavorable position than it would have been had the bonds not been lost.

The mortgage provides that the aggregate amount of bonds issued and outstanding shall never at any one time exceed the principal sum of $100,000,000. This constituted an agreement between the rail-

road company and the bondholders that the property covered by the mortgage should stand as security for the payment of the bonds stated, and, in case of foreclosure and sale, the proceeds derived therefrom should be applicable to such bonds and no others. The judgment orders that two additional bonds be issued. When issued, the total aggregate will exceed that permitted by the mortgage, and to that extent its provisions, to which reference has been made, would be violated. This view is not met or answered by the fact that only two $1,000 bonds are directed to be issued, because, if defendant can issue those bonds, it could likewise, under similar circumstances, issue any number up to the total amount authorized to be issued. The bonds which are claimed to have been lost are negotiable instruments in the hands of a person entitled to enforce them. The new bonds directed to be issued will, in the hands of a bona fide holder for value, occupy a precisely similar position, and yet the security has not been increased except by the indemnity bond, which, in view of the time the bonds have to run cannot be considered as taking the place of specific property.

Under the circumstances, in the absence of proof that the bonds have been destroyed, I think all that can fairly be required of the appellant is that it issue to the plaintiff a certificate of indebtedness reciting the loss of the bonds and stating it is given to replace them; that such certificate be for the amount of the bonds, with interest and principal payable in the same amounts, at the same time and in the same manner therein provided, and entitling the holder to the same rights under the mortgage that the holder of the bonds would have; and that the certificate provide, in case the lost bonds or either of them shall subsequently be found in the possession of one entitled to enforce them, that then the certificate, to that extent, shall become unenforceable and void. As a condition of the issuance of such certificate, the plaintiff should give to the appellant a bond in amount and with sureties to be approved by the court, conditioned to indemnify and save harmless the appellant against any and all liability upon the lost bonds and coupons, and to reimburse it for any and all payments which it may make in due course upon such bonds and coupons, and any and all expenses incurred in good faith in resisting demands for the payment thereof, or any of them, or in seeking to recover such payment or payments. The judgment should also provide for the giving of further security in case the one given should prove to be inadequate.

The judgment appealed from, in so far as it directs the payment of the past due interest, should be affirmed, but in other respects modified in accordance with this opinion, with costs to the appellant.

Settle order on notice. All concur.