WILLIAM H. REYNOLDS, Respondent, *v.* TITLE GUARANTEE AND TRUST COMPANY, Appellant.

Second Department, March 27, 1924.

Corporations — bonds — action by registered holder of corporate bonds against trustee to recover payment thereon — action based on trustee's certification — bonds in question are duplicate bonds issued in place of bonds fraudulently claimed to have been lost — bonds were certified by trustee after compliance with its terms — certification amounts to warranty by trustee that bonds were entitled to benefits under mortgage — trustee is liable — indemnity given on issuance of duplicates and commissions are sufficient consideration for guaranty.

Duplicate corporate mortgage bonds issued to replace bonds which were fraudulently claimed to have been lost are, when certified by the trustee after compliance with its terms, to be considered as having been issued in place and stead of the original bonds and are not to be regarded as copies thereof, but intended to have all the force and validity of the originals.

When a trustee certifies on a duplicate bond that it is one of the bonds described in the mortgage such certification amounts to a warranty on its part that the bond is entitled to the benefits afforded by the mortgage or deed of trust, and when a person in good faith purchases a duplicate bond with a certificate upon it by the trustee to the effect stated, he has a right to rely on the truth of that statement and the trustee is bound thereby.

The consideration to support the guaranty is to be found in the indemnity bond given to the trustee and the corporation at the time the duplicate bond was issued and in the commissions received by the trustee for its work.

Accordingly, where it appears that the president of a corporation which had issued mortgage bonds, bought from an original bondholder certain duplicate bonds issued to the original holder upon the false representations by said

holder to the trustee that the original bonds had been lost, and upon the giving of security by the original holder to the trustee and the corporation which ultimately proved worthless, the purchaser is entitled in an action based on the certification by the trustee on the duplicate bonds, to recover from it the *pro rata* amount which the trustee has for distribution, notwithstanding that the trustee has previously paid the same to the holder of the original bonds.

KELLY, P. J., dissents, with opinion.

APPEAL by the defendant, Title Guarantee and Trust Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Nassau on the 21st day of April, 1923, upon the verdict of a jury rendered by direction of the court.

*Charles L. Woody* [*Edward M. Perry* with him on the brief], for the appellant.

*Alvin C. Cass,* for the respondent.

YOUNG, J.:

William H. Reynolds, the plaintiff, was the president of a corporation called Dreamland. On the 12th day of March, 1904, Dreamland, through its president, executed a deed of trust to the Title Guarantee and Trust Company, as trustee, to secure a bond issue of $750,000, which bonds were to be fifteen hundred in number and of $500 each and numbered consecutively from 1 to 1,500. Some time in 1915, while Reynolds was president, and after said bonds had been issued, Reynolds desired to buy from one Llewellyn L. Powell six of said bonds, said Powell being at that time the registered holder thereof. Reynolds called Mr. Pilsworth, the trust officer of the Title Guarantee and Trust Company, on the telephone and stated that he wanted to buy the Dreamland bonds of said Powell; that Powell had lost the bonds and Reynolds wanted to know what could be done. Pilsworth told Reynolds " that if Powell would make an affidavit showing the bonds had not been negotiated, would give a bond of indemnity running to the Dreamland Company and the Title Company as trustee, and Dreamland would duplicate the bonds, the trustee would certify them." A few days after this conversation, Mr. Whyte came to see Mr. Pilsworth and said he came from Reynolds, and requested Pilsworth to typewrite duplicate bonds, and said he would procure the necessary affidavit from Powell which Mr. Pilsworth had requested, and also the bond of indemnity. Whyte thereafter returned with the duplicate bonds executed and with an assignment running from Mr. Powell to Mr. Reynolds. The duplicate bonds were signed " Dreamland, By William H. Reynolds, President." They were issued to Llewellyn L. Powell, and were marked across

Second Department, March, 1924.    [Vol. 208

the face in red ink, " Duplicate." Thereupon, Pilsworth, as trust officer of the Title Guarantee and Trust Company, certified that the bonds were duplicate bonds under said deed of trust and registered them as belonging to Powell. About three months later they were registered in plaintiff's name.

The affidavit of Powell and a bond of indemnity were also delivered to defendant, as had been requested. The affidavit proved to be false, and the surety company giving the bond subsequently failed.

It appears that on October 22, 1908, Powell had pledged with one MacQuoid the original " Dreamland " bonds, and, on said date, had executed and delivered to said MacQuoid an irrevocable bond power covering each of said bonds as security for a loan of $2,500 then made by said MacQuoid to said Powell, and which said bond powers MacQuoid kept until January 27, 1916, and then gave notice of sale thereunder; that on or about February 9, 1918, the said MacQuoid became the absolute owner of said six original bonds by the purchase thereof upon the auction sale. It further appeared that some time in 1920 the title company, as trustee under said trust deed, received from the city of New York $1,238,255.86 as a payment for part of the land of " Dreamland " covered by said deed, acquired by the city of New York in condemnation.

The plaintiff and other bondholders signed a consent that said sum, after the payment of mortgages and expenses, should be distributed *pro rata* among the bondholders under said contract. This distribution amounted to $400 for each bond. Soon after said sum of money had been received, the said MacQuoid claimed that he was the registered owner and holder of said six bonds and demanded that the said sum of $400 upon each of said bonds be paid to him out of the said fund in the hands of the defendant, and upon refusal shortly thereafter commenced actions against this defendant in the Municipal Court of the City of New York to recover the said sum of $400 on each of said bonds.

The title company refused to pay and made a motion to interplead Reynolds in the Municipal Court actions. Reynolds opposed the motion, and the motion was denied. After the motion for interpleader had been denied, the defendant paid MacQuoid, pursuant to his demand. No judgment seems to have been entered.

Defendant's first contention is that the duplicate bonds were issued to Powell by the corporation and then assigned to Reynolds; that Reynolds stands in Powell's shoes, and has no greater rights than Powell, and, he having procured the issue of duplicate bonds through fraud, obviously could not maintain the present action.

In support of this claim the appellant cites a number of authorities, stating the well-known rule as to the rights of an assignee of non-negotiable securities, and also holding that as between different assignees of a chose in action by express assignment from the same person the one prior in time will be protected.

There can be no question of the rule laid down by these authorities. The difficulty is that it has no application to the facts of the present case, because in the present action the defendant certified as to the bonds and the action is brought upon that certification. If a bond and mortgage is assigned, the assignee takes it subject to all equities in favor of the mortgagee existing at the time of the assignment, but when the mortgagee has certified that no defenses exist, he is then estopped to assert such defenses against the assignee, holding in good faith and for value. In the present case defendant is liable, if at all, because of the representations made in the certificate upon which plaintiff purchased the bonds and paid his money.

In the mortgage or deed of trust we find the following provisions, to wit: " This Bond is transferable by the holder hereof only in person, or by attorney duly authorized, upon the books of the Trustee at its said office. This Bond shall not be valid or obligatory for any purpose until it has been duly authenticated by the certificate of the Title Guarantee and Trust Company, as such Trustee, endorsed hereon." Also: " All persons whose names are registered on the books of the Trustee as owners of the said Bonds shall be conclusively deemed to be the actual *bona fide* owners thereof," etc.

When the plaintiff inquired of defendant's trust officer what he should do to secure duplicate bonds in the place of those supposed by him to be lost, the defendant might have refused to do anything unless the original bonds were produced. Powell then could have brought an action to compel the corporation to issue duplicate bonds to him or the corporation might have issued duplicate bonds upon such terms as it saw fit. But after they were issued by the corporation the defendant might well have refused to certify until the original bonds were produced, and then, after such refusal, if Powell had brought an action to compel the defendant to certify, the judgment, if he succeeded in his action, might well have contained provisions to indemnify defendant. (*Switzerland G. Ins. Co.* v. *N. Y. C. & H. R. R. R. Co.,* 152 App. Div. 70.)

This course the defendant did not take, but voluntarily stated the conditions under which it would recognize and certify the duplicate bonds. These conditions were complied with and the new bonds certified and registered, first in Powell's name, and later in the name of plaintiff, and plaintiff in good faith paid Powell

for the bonds. This certification written upon each bond was as follows:

" This Bond is issued in place and stead of the original bond of the same number said to have been lost or destroyed.

" Dated NEW YORK CITY, *March 31st,* 1915.

TITLE GUARANTEE & TRUST COMPANY AS TRUSTEE

" By:— T. P. PILSWORTH,

" *Trust Officer.*"

" TRUSTEE'S CERTIFICATE.

" The undersigned hereby certifies that the within is one of the bonds described in the mortgage therein mentioned.

TITLE GUARANTEE & TRUST COMPANY AS TRUSTEE

" By:— T. P. PILSWORTH,

" *Trust Officer.*"

The only question presented upon this appeal is as to the legal effect of this certification, and what liability, if any, it imposed upon the trust company so certifying. The appellant insists that defendant merely certified that these new bonds were copies of the original; that it never intended and that the certificate does not justify the contention that these duplicate bonds should be considered as original and valid in case the original bonds turned up. To my mind, there is nothing in this argument. It seems plain that the duplicate bonds were issued in place and stead of the original ones and are not to be regarded as copies of the originals, but intended to have all the force and validity of the originals. In the next place, appellant urges that the certification made by the defendant imposed no obligation upon it such as claimed by the plaintiff in this action; that a trustee making a certificate of this kind upon a bond does not warrant the sufficiency of the security, but merely identifies the bond and the person holding it, and that its main purpose is to prevent an over-issue and to insure the orderly conduct of the corporate business.

The respondent, on the other hand, cites the case of *Tschetinian* v. *City Trust Co.* (186 N. Y. 432) as decisive of the controversy. In that case it was held that where a trust company as the trustee under a corporation mortgage, indorsed upon the back of a series of bonds a certificate that " This bond is one of a series of bonds mentioned and described in the mortgage within referred to," and the bonds so certified were indorsed by the mortgagor as first mortgage bonds, whereas in fact they were not, such a certificate in the absence of fraud or deceit did not make the trustee making such certificate a guarantor of the quality and extent of the security given by the mortgage. In the course of the opinion written in

that case, however, Judge Hiscock said, referring to the certification made by the trustee: " The language employed when interpreted in its natural and ordinary meaning simply amounts to a statement identifying the bond whereon it is written as one of those mentioned in the mortgage, and the effect of this is an assurance to the purchaser that his bond is amongst those entitled to the benefits and protection afforded by such mortgage."

This language, of course, was not necessary to the decision in that case, but it seems to be a direct statement as to the force and effect of a certification made by a trustee under facts and circumstances similar to the present case.

In *Holbrook* v. *New Jersey Zinc Co.* (57 N. Y. 616), which was an action to recover damages for a refusal of the defendant to transfer upon its books certain shares of stock of which plaintiff held the certificates, it was stated: " It cannot now be denied, that if a corporation having power to issue stock certificates does in fact issue such a certificate, in which it affirms that a designated person is entitled to a certain number of shares of stock, it thereby holds out to persons who may deal in good faith with the person named in the certificate, that he is an owner and has capacity to transfer the shares. This proposition does not rest on any view of the negotiability of stock but on general principles appertaining to the law of estoppel. * * * When the defendant issued its certificates to William T. Riggs, it affirmed to all persons who might deal with him, that he owned a certain portion of its capital stock and had full power to transfer it. Any purchaser has a right to rely upon this statement, and to claim the benefit of an estoppel in its favor."

That, however, was an action brought against the company and not against a trustee, as in the present case.

The question presented may be open to some doubt, but I incline to the opinion that under the circumstances disclosed when the defendant certified that the bonds in question were the bonds described in the deed of trust, it amounted to a warranty on its part that those bonds were entitled to the benefits afforded by the deed of trust. Strictly, perhaps, it is the doctrine of estoppel that applies, but the effect is the same. It seems to me that when one in good faith purchases a bond with a certificate upon it by a trust company acting as trustee, as in the present case, to the effect that that very bond is one of the bonds described in the deed of trust, he has a right to rely on the truth of that statement. I think it is not an undue burden to place upon the trust company in such case the burden of determining the truthfulness of such

36

a statement. Of course, ordinarily, the trust company assumes responsibility and in case of loss calls upon the surety to indemnify.

Appellant insists there is no consideration to support a guaranty, but I think if this is necessary, the giving of the surety bond supplies it, and probably the commissions received by the trust company are also sufficient, as the certification of the duplicate bonds may fairly be said to be part of the duty of the trust company under the mortgage.

While the defendant insists that it had no defense to the actions brought by MacQuoid in the Municipal Court, it would seem that the lack of defense was due to its own negligence.

It is alleged in paragraph XIII of the answer that the original bonds were registered in the name of MacQuoid on November 5, 1915. The duplicate bonds were registered in plaintiff's name on July 22, 1915. Apparently the defendant, by mistake, registered the bonds both in the name of Reynolds and MacQuoid. Under the terms of the deed of trust the persons whose names were registered on the books of the trustee as owners of the bonds were to be conclusively deemed the actual *bona fide* owners thereof. It was further provided that " The Trustee shall not be bound to recognize any party as a holder of said bonds nor to take any action at his request, unless his bonds are first submitted to the Trustee for inspection or his ownership thereof is otherwise shown to the satisfaction of the Trustee, nor then if his ownership be questioned until his title to said Bonds is satisfactorily established."

It is apparent that if defendant had not registered the original bonds in the name of MacQuoid, it could have defended the actions in the Municipal Court on the ground that MacQuoid was not the registered holder thereof, and so not entitled to maintain them.

MacQuoid did not get absolute title to the bonds until after the sale in February, 1918. When defendant registered these bonds in MacQuoid's name, he held them as collateral security for a loan.

Long before MacQuoid became the owner of the bonds, the duplicates had been issued and registered in plaintiff's name. It is evident that the question of the rights of plaintiff and MacQuoid and the liability of defendant under the facts and circumstances shown might have been presented in a different light and defendant been in a position to defend the actions in the Municipal Court on the ground that MacQuoid was not the registered owner of the bonds.

I advise that the judgment be affirmed, with costs.

RICH, MANNING and KAPPER, JJ., concur; KELLY, P. J., reads for reversal.

KELLY, P. J. (dissenting):

I am obliged to dissent from the affirmance of the judgment in this case.

We should not lose sight of the obligation of the defendant trustee. The bonds were not the bonds of the defendant, but of the Dreamland corporation of which the plaintiff was the president. The defendant was the mortgagee named in the deed of trust and its duty is prescribed in article XVI: "The party of the second part shall and will upon the execution hereof certify said bonds by signing the certificate thereon endorsed, and will deliver the same, so certified, to the party of the first part to be used or negotiated." There is misleading reference in the points on both sides to the trustee "duplicating the bonds," or "issuing the bonds." The trustee had no power to issue the bonds or to duplicate them. Its duty related solely to certifying that a particular bond was one of the bonds described in the trust deed.

The bonds derived their status primarily from the signature of the Dreamland company by Mr. Reynolds as president and Mr. Sternberger as secretary and the seal of the corporation. The trustee had no control over the actions of the company or its officers.

Nor can there be any doubt, in my opinion, that the original bonds acquired by MacQuoid were valid and binding obligations of the company. They had been duly issued, they were part of the issue authorized by the company, and after issuance to Powell had been certified by the trustee.

I cannot see how the Dreamland company could deny their validity or how the failure to interplead Mr. Reynolds in the Municipal Court action (brought about by his refusal to be interpleaded) affected the situation at all. If Mr. Reynolds had been interpleaded, or if for some reason which I do not perceive, there was any obligation on the *trustee* to commence an action for interpleader, the result would be the same. They were valid obligations of the Dreamland company and MacQuoid was entitled to collect on them.

Mr. Reynolds' dealings with Mr. Powell were all outside of the duties of the trustee. Mr. Powell having disposed of his bonds, conceived the idea of defrauding Mr. Reynolds and the Dreamland company by procuring the issue of a duplicate set of bonds, which he accomplished by means of fraudulent statements and perjury.

It is said that Mr. Reynolds (the president of the Dreamland company) inquired of the trustee as to what would be necessary to bring about an issue of duplicate bonds. I cannot see how the trustee was under any contractual or legal obligation to advise the president of the company concerning the issue of duplicate bonds,

or how the trustee was involved in the criminal transactions of Mr. Powell even assuming that it said it would certify duplicate bonds if the Dreamland company was satisfied that they should be issued and obtained surety.

These were not bonds of the Title Guarantee and Trust Company. The duties and obligations of the trustee must be found in the deed of trust. It is provided in article XXIII:

" Said Trust Company for itself and its successors hereby accepts the trusts created and assumes the duties imposed by this instrument upon the following terms and conditions:

" The Trustee may select and employ in and about said trusts and duties, suitable agents and attorneys whose reasonable compensation shall be paid to said Trustee by said Company, or in default of such payment shall be a charge upon the hereby mortgaged property and its proceeds paramount to said bonds, and the Trustee shall not be liable for any neglect, omission or wrong doing of such agent or attorney, if reasonable care shall have been exercised in his or their selection, nor shall it be otherwise answerable, save for its own wilful negligence or default."

These duplicate bonds issued by the Dreamland company in July, 1915, were in excess of the issue authorized by the trust deed. They were the product of crime and perjury. The Dreamland company and its officers, including Mr. Reynolds, had no power to issue them. When the Dreamland company did in fact issue them and delivered them to Mr. Powell, it was a wrongful and illegal act, brought about without any intervention by the trustee, and when Mr. Powell turned them over to Mr. Reynolds, and Reynolds brought them to the trustee requesting certification, it is evident that the trustee relied on the fact that the Dreamland company had issued them.

The certification placed upon the bonds that they were part of a lawful issue is expressly limited by the statement they were " issued in place and stead of the original bond of the same number said to have been lost or destroyed." Who made the statement that the original bonds were lost or destroyed? Not the trustee, but Mr. Reynolds, the president of the company, who is the plaintiff in this action.

The trustee had no power to certify bogus bonds. No employee of the trust company had authority to impose liability on the trustee by expediting Mr. Reynolds' desire to acquire the bonds from Powell. I think the *causa causans* of the loss was Mr. Reynolds' negotiation with a criminal. I think the trustee acted upon the faith of the issuance of the bonds by the Dreamland company and Mr. Reynolds' representations.

At the time Reynolds procured the certification of these bonds with the *caveat* attached, the trustee had no knowledge of the sale to MacQuoid.   Later on, MacQuoid presented the genuine bonds for certification.   I cannot see how MacQuoid's rights were in any way affected by Mr. Reynolds' dealings with Powell by which the bogus bonds were issued and certified to by the trustee.

I, therefore, vote to reverse the judgment upon the law and the facts, and to grant the defendant's motion for the direction of a verdict made at the close of the case.

Judgment affirmed, with costs.